J:\lease\RALEIGH\FO\Ritas Ice 1 #74393 - Market Square P#2598\Lease Drafts\LL\74393 LS5(LEO).docx
EBB/LEO/LMP/CFG
11-o72450
March 26, 2021

LEASE

THIS AGREEMENT, made this ~~8~~ 6th day of ~~Apr.~~ May , 2021, between MSF MARKET, LLC ("Lessor"), having offices at 7978 Cooper Creek Boulevard, Suite #100, University Park, Florida 34201, party of the first part, and ICE RAK LLC d/b/a Rita's Italian Ice ("Lessee"), a Florida limited liability company, having offices at 1471 LAKE BONNY DR. W, LAKELAND, FL 33801, party of the second part.

WITNESSETH:

That the Lessor hereby lets to the Lessee and the Lessee hereby hires from the Lessor the following premises:

approximately 1,500 square feet of space ("Demised Premises") located at Market Square, US-98N, Lakeland, Florida ("Shopping Center") for a term of five (5) years

to commence one hundred fifty (150) days after the full execution of this Lease, or to commence on the date the Lessee opens for business, whichever is sooner (the "Commencement Date"). Within a reasonable time thereafter, Lessor and Lessee shall enter into a supplemental agreement prepared by Lessor which affirms the date that the Demised Premises were made available and the date upon which the original term of said Lease shall expire.

LESSEE COVENANTS TO PAY RENT AS FOLLOWS:

an annual rental of $45,000.00 payable in equal monthly installments of $3,750.00 each for the first year;

an annual rental of $46,350.00 payable in equal monthly installments of $3,862.50 each for the second year;

an annual rental of $47,740.50 payable in equal monthly installments of $3,978.38 each for the third year;

an annual rental of $49,172.72 payable in equal monthly installments of $4,097.73 each for the fourth year; and

an annual rental of $50,647.90 payable in equal monthly installments of $4,220.66 each for the fifth year.

in advance on the first day of each month without offset or deduction to Lessor, in its name, at P.O. Box # 823201, Philadelphia, Pennsylvania 19182-3201, or to such other address or payee as Lessor may designate in writing. In the event that the Commencement Date is other than on the first of the month, then the rental for the balance of the month shall be pro-rated accordingly and the full term of the Lease shall commence on the first day of the following month.

Lessee shall be required to pay any applicable taxes levied against rental

Please initial

**LL**

J:\lease\RALEIGH\LEO\Ritas Ice 1 #74393 - Market Square P#2598\Lease Drafts\LL\74393 1 S5(LEO).docx
FBB/LEO/LMP/CEG
11-077515-
March 26, 2021

payments or other payments required to be made hereunder.

Lessee agrees to pay all rents and other charges under the terms of this Lease when they are due and payable. Any rents remaining unpaid ten (10) days after due date or any other charges remaining unpaid ten (10) days after receipt of invoice shall be subject to a late charge equal to a one and one-half percent (1.5%) monthly late charge (or the maximum amount permitted by law, if less).

EVERY COVENANT OF THIS LEASE SHALL BE DEEMED A CONDITION THEREOF WHICH SHALL INCLUDE:

COVENANT TO PAY RENT

1.    The Lessee shall pay the above specified rent at the times and place hereinbefore mentioned.

USE

2.    Lessee covenants and agrees to use the Demised Premises for the following purpose only:  Rita's Ice • Custard • Happiness® store selling Italian ice, soft-serve and hand-crafted custard, yogurt, sorbet, and frozen treats with the incidental sales of coffee, fresh baked cookies and waffles as well as any other incidental and ancillary related items as may normally be sold at Rita's Ice • Custard • Happiness® stores in the State of Florida which do not conflict with any other exclusive use granted to another tenant in the Shopping Center. ("Permitted Use")

SIGNS, BUILDING ALTERATIONS AND CHANGES

3.    The Lessee shall not use the Demised Premises for any other purpose than as above stated, nor erect or display any signs on the Demised Premises, nor make any alterations, additions or improvements to or upon the Demised Premises without the prior written consent of the Lessor, nor make or permit any defacement, injury or waste in, to or about the Demised Premises. Notwithstanding the foregoing, after Lessee's initial construction and opening for business, Lessee shall have the right to make alterations to the interior of the Demised Premises not to exceed $10,000.00 per alteration subject to Lessor's approval of plans (Lessee shall provide Lessor with copies of plans related thereto prior to construction) provided that Lessee does not alter or impact the roof, structural components, mechanical systems or utility and service lines of the building, and that said alterations are performed by licensed and insured professionals in a good and workmanlike manner in compliance with all applicable laws and building codes. Lessor reserves the right to enlarge or diminish store sizes (other than the Demised Premises) and to construct additional buildings on the site of which the Demised Premises are a part.

SUBLETTING AND ASSIGNMENT

4.    A.    Lessee shall not assign or otherwise transfer this Lease or any

2

Please initial

LL

J.\lease\RALEIGH\FOR\tas fee I #74393 - Market Square P#2598\Lease Drafts\L1\74393 LSS(LEO) docx
FBB/LEO/LMP/CFG
FLH72428
March 26, 2021

of its rights hereunder, mortgage or otherwise encumber this Lease or any of its rights hereunder, sublet the Demised Premises or any part thereof, or permit the use of the Demised Premises or any part thereof by parties other than Lessee.  Consent by the Lessor to any assignment or sublease shall not be deemed consent to further or additional assignments and sublettings, nor shall any consent release Lessee (or its guarantor, if any) from liability for performance of all terms and conditions of this Lease.  In each case prior written consent of the Lessor must be obtained.  Concurrently with any request for Lessor's consent Lessee shall pay to Lessor the sum of $500.00 for Lessor's review and processing of such request.

B.    In the event of any assignment or subletting, even with the consent of Lessor, then at Lessor's option either: (i) rent shall be the rent stated in this Lease, including any increases which may occur from time to time under this Lease, multiplied by a fraction, the numerator of which is the Price Index for the month immediately preceding the effective date of such assignment or subletting, and the denominator of which is the Base Index (as such Indexes are defined below); or (ii) rent shall be the rent stated in this Lease, including any increases which may occur from time to time under this Lease, plus the periodic payments payable by any assignee or sublessee under its agreement with Lessee in excess of that provided for in this Lease.

C.    As used herein, "Price Index" shall mean the Consumer Price Index, All Urban Consumers (U.S. City Average), as compiled and published by the Bureau of Labor Statistics, United States Department of Labor, as revised from time to time for base averages.  If such Price Index should in the future be compiled on a different basis, appropriate adjustments will be made for purposes of computations under this clause.  If the United States Department of Labor no longer compiles and publishes such Price Index, any comparable index published by any other branch or department of the Federal Government shall be used for the purpose of computing the adjustments herein provided for as selected by Lessor, and if no such index is compiled and published by any branch or department of the Federal Government, the statistics reflecting cost of living changes as compiled by any institution, organization or individual generally recognized as an authority by financial and insurance institutions shall be used as a basis for such adjustments as selected by Lessor.  As used herein "Base Index" shall mean the Price Index as it exists for the month immediately preceding the date of this Lease.

D.    If Lessee is a partnership, a transfer of any interest of a general partner, a withdrawal of any general partner from the partnership, or the dissolution of the partnership shall be deemed to be an assignment of this Lease.  If Lessee is a corporation, unless Lessee is a public corporation, whose stock is regularly traded on a national stock exchange, or is regularly traded in the over-the-counter market and quoted on NASDAQ, any dissolution or merger of Lessee or sale or other transfer of a percentage of capital stock of Lessee which results in a change of controlling persons, or the sale or other transfer of substantially all of the assets of Lessee, shall be deemed to be an assignment of this Lease.  The transfer of membership in a limited liability company or any other entity, or the dissolution or merger of Lessee, or the sale or other transfer of more than fifty percent (50%) which results in a change of control, or the sale or transfer of substantially

Please initial    LL

J:\lease\RALEIGH\LEO\Ritas Ice I #74393 - Market Square P#2598\Lease Drafts\11\74393 LS5(LEO).docx
EBB/LEO/LMP/CEG
11-07131
March 26, 2021

all of the assets of Lessee shall be deemed an assignment of this Lease.

E. Notwithstanding the foregoing, Lessee shall have the right to assign the Demised Premises and all of its' obligations under the lease without Lessor's consent and without fee (but with 30 day prior written notice to Lessor) to the Rita's Franchise Company, LLC ("Franchisor") or another Rita's franchisee (which has met the creditworthiness of the Franchisor and Lessor) (collectively referred to as "Rita Assignee") but no such assignment shall be effective unless and until: (a) the lease is in full force and effect and there are no defaults thereunder; (b) Lessee agrees in writing to remain liable under the terms of the lease for the remainder of the term (including any options); (c) the Rita Assignee shall covenant, by written instrument, in form and content satisfactory to Lessor, to pay the rent reserved and to perform all of Lessee's obligations under the Lease, including any accrued obligations as of the time of assignment; (d) such assignment shall be subject to all the terms and conditions of this Lease including the requirement to use the Demised Premises only for the Permitted Use; (e) the Rita Assignee shall not be subject to any bankruptcy or insolvency proceedings at the time of such assignment; and (f) the original copy of the fully executed assignment, as well as any other documentation of satisfaction of the other terms and conditions set forth in this paragraph or those that may be reasonably requested by Lessor, is delivered prior to the assignment becoming effective.

SUBORDINATION OF MORTGAGES

5.    This Lease shall be subject and subordinate to the lien of any mortgage or mortgages or deed or deeds of trust, which at any time may be placed upon the Lessor's interest in the Demised Premises.  Lessee shall execute, upon the request of Lessor, such documents as required by Lessor's lender to evidence such subordination and other matters required by Lessor's lender.

EXAMINATION OF PREMISES

6.    The Lessor shall at all reasonable times have access to the Demised Premises for the purposes of examining the same, making repairs required to be made by Lessor, or for the purpose of showing the Demised Premises to prospective purchasers or tenants; and for a period of at least three (3) months prior to the expiration of the Lease or any renewal thereof, shall have the right to post a sign on the front of Demised Premises offering the same "To Let" or "For Sale", which said sign the Lessee shall permit to remain without molestation. Lessor's sign shall neither obstruct the egress and ingress to the Demised Premises.

LAW AND RULE COMPLIANCE

7.    Lessee agrees to observe and comply with all laws, ordinances, rules and regulations of the Federal, State, County, Municipal authorities and regulations of the Board of Fire Underwriters applicable to the Demised Premises and to the business to be conducted by Lessee in the Demised Premises.

4                                                     Please initial   

J:\lease\RAI\EIGH\LEO\Ritas Ice I #74393 - Market Square P#2598\Lease Drafts\LL\74393 LS5\LEO).docx
EBB/LEO/LMP/CEG
11 = 75426
March 26 -2021

INCREASE IN INSURANCE RISK

8.    In the event that Lessee's occupancy increases the total insurance premium on the premises of which the Demised Premises are a part, Lessee shall pay said increase in insurance premium as additional rental. Lessee agrees not to do or permit anything to be done in said Demised Premises or keep anything therein, which will increase the rate of fire insurance premiums on the improvements or any part thereof, or on property kept therein or which will obstruct or interfere with the rights of other tenants or conflict with the regulations of any pertinent authority or public or quasi-public department or with any insurance policy upon said improvements or any part thereof. In the event of any increase in insurance premiums resulting from Lessee's violation of the foregoing, or from any act or omission on the part of Lessee, Lessee agrees to pay said increase in insurance premiums on the premises of which the Demised Premises are a part. Lessee shall, in any event, hold the Lessor harmless from the effect of any said violation, act or omission. In any action or proceedings wherein the Lessor and Lessee are parties, a schedule or "make up" of rate for the building on the Demised Premises, purporting to have been issued by the Fire Insurance Exchange in the state in which the Demised Premises is located, or other body making fire insurance rates for the Demised Premises, shall be prima-facie evidence of the facts therein stated and of the several items and charges included in the fire insurance rate then applicable to the Demised Premises.

UTILITIES AND SERVICES

9.    The utilities and services including, without limitation, electricity, water, gas, telephone and sewer service, furnished to the Demised Premises shall be provided and paid for by the Lessee, commencing on the date Lessee takes possession of the Demised Premises. Lessee shall not discontinue utility service to the Demised Premises at any time during the term of this Lease. If a sprinkler system is on the premises, Lessee will promptly pay water charges for such system regardless of basis on which municipality or water authority charges for such service. The Lessor shall not be liable for any interruption or delay in any of the above services unless the interruption was caused by Lessor's gross negligence or willful misconduct. In the event Lessee fails to have the utility companies set up the accounts in its name on the date Lessee takes possession of the Demised Premises, then Lessee shall pay Lessor for the utilities consumed at the Demised Premises plus an additional twenty percent (20%) to cover Lessor's administrative and overhead costs. Lessee shall at all times operate the HVAC system and all utilities serving the Demised Premises so as to prevent any damage to the Demised Premises or the systems serving the Demised Premises. In the event that any tap fee, impact fee or other assessment is payable in connection with the provision of utility service to the Demised Premises or is otherwise payable in connection with construction at the Demised Premises then such fees shall be paid by Lessee (and if Lessor has already paid (or will pay) such amounts then in lieu of paying such amounts to the municipality Lessee shall reimburse to Lessor, provided that any such reimbursement to Lessor shall not exceed the amount which Lessee would pay the municipality). Lessor reserves the right to have Lessee establish an escrow account for Lessee's water usage at the Demised Premises whereupon Lessee shall pay to Lessor a

Please initial

LL

J:\lease\RALEIGH\LEO\Ritas Ice L#74393 - Market Square P#2598\Lease Drafts\L1\74393 LS5(LEO) docx
FBB/LEO/LMP/CFG
11-072420
March 26, 2021

monthly amount reasonably determined by Lessor to cover the next water bill. If at any time there is a shortfall in said escrow account, Lessee shall pay such shortfall to Lessor within ten (10) days of demand therefor.

TERMINATION ON DEFAULT AND RIGHTS OF LESSOR

10.    A.    In the event that Lessee shall violate any condition, covenant or agreement contained in this Lease, or any part thereof, then Lessor shall have the right at Lessor's election to terminate this Lease on first giving to Lessee three (3) days' notice to cure such default, if such default is the failure to pay past due rent, or ten (10) days' notice if such default is the breach or non-observance of any other covenant or condition, provided, however, that if the nature of Lessee's default is such that it cannot be cured solely by payment of money and more than ten (10) days may be reasonably required for such cure, then Lessee shall not be deemed to be in default if Lessee shall commence such cure within said ten (10) day period and shall thereafter diligently prosecute such to completion [such election shall be served by private delivery service such as FedEx where a signed delivery receipt is obtained, by registered or certified mail or by overnight delivery service which provides written receipts, addressed to Lessee at either the address first above given or pursuant to any notice clauses herein contained]. In the event of Lessee's failure to cure, the above mentioned term shall cease upon the expiration of said three (3) or ten (10) days, as the case may be, in the same manner and to the same effect as if that were the expiration of the original term of this Lease; it being further understood and agreed that such election shall be solely in the discretion of Lessor, and, if exercised, shall be conclusive upon Lessee.

        B.    Notwithstanding the foregoing provision, it is agreed that if Lessee or its guarantor (if any) shall be adjudicated a bankrupt, or a receiver is appointed for the business and property of Lessee or its guarantor (if any), or if Lessee or its guarantor (if any) shall make an assignment for the benefit of creditors, then at the option of Lessor, this Lease may be canceled upon written notice by Lessor to Lessee, but Lessor shall not be required to give the notice as required in Subparagraph 'A.'

        C.    If the Lessee shall be deemed in default of any one or all of the events contained in Subparagraphs A and B above beyond the applicable notice and cure periods, the Lessor may to the extent permitted by law:

            (1)    at its option, at once, terminate this Lease;

            (2)    upon the termination of this Lease either at the option of the Lessor as aforesaid, or at the expiration by lapse of time of the term hereof, the Lessee will at once surrender possession of the Demised Premises to the Lessor and remove all effects therefrom;

            (3)    if the Lessee shall not remove all effects from the Demised Premises as above provided, Lessor may, at its option, remove any or all of said effects in any manner (without being guilty of trespass) that Lessor shall choose and store the same without liability for loss thereof, and Lessee will pay the Lessor, on demand, any and all expenses incurred in such

6

Please initial

LL

J:\lease\RALEIGH\LEO\Ritas Ice I #74393 - Market Square P#2598\Lease Drafts\LL\74393 LS5(LEO).docx
EBB/LEO/LMP/CEG
11/02/2020
March 26, 2021

removal and also storage on said effects for any length of time during which
the same shall be in Lessor's possession or in storage, or Lessor may at its
option, without notice, sell any or all of said effects in such manner and
for such price as the Lessor may deem best and apply the proceeds of such
sale upon any amounts due under this Lease from the Lessee to the Lessor,
including the expenses of removal and sale;

(4)  relet the Demised Premises or any part or parts thereof
either in the name of Lessor or Lessee for the term of this Lease, and Lessee
shall pay Lessor any deficiency between the rent hereby reserved and
covenanted to be paid in such reletting, including, but not limited to,
attorneys' fees, brokers' fees and expenses of remodeling and putting the
Demised Premises in good order and preparing the same for re-rental. Such
deficiency shall be paid in monthly installments, upon statements rendered
by Lessor to Lessee.  For the purpose of determining the deficiency in rent,
the rent reserved shall be deemed to be the guaranteed minimum monthly rental
herein provided for plus any additional charges otherwise due pursuant to
this Lease.  Any suit brought to collect the amount of the deficiency for
any one or more months shall not preclude any subsequent suit or suits to
collect the deficiency for any subsequent months;

(5)  collect from Lessee any reasonable loss or damage Lessor may
sustain by reason of any breach and any diminished value of the Demised
Premises resulting from said breach;

(6)  in the event of a breach by Lessee of any of the covenants
or provisions of this Lease, Lessor shall have the right to enjoin any such
breach;

(7)  declare the entire rental for the balance of the term,
including the guaranteed minimum monthly rental herein provided for
immediately due and payable at once.

(8)  cure such default by Lessee at Lessee's expense, and upon
completion of such cure by Lessor Lessee shall, upon demand and as additional
rent, reimburse Lessor for all costs in connection therewith;

(9)  take any enforcement action allowed by the laws of the State
of Florida, either at common law or pursuant to statute.

D.  No receipt of monies by the Lessor from the Lessee, after the
termination in any way of this Lease or after giving of any notice, shall
reinstate, continue or extend the term of this Lease, or affect any notice
given to the Lessee prior to the receipt of such money, it being agreed that
after the service of notice or the commencement of a suit, or after final
judgment for possession of the Demised Premises, the Lessor may receive and
collect any rent due, and the payment of said rent shall not waive or affect
said notice, said suit or said judgment.  Lessee agrees that in the event
Lessor commences summary proceedings or litigation in connection with this
Lease that Lessee shall not interpose any non-compulsory counterclaim in any
such proceeding.

Please initial **LL**

J:\lease\RALEIGH\LEO\R:las Ice I #74393 - Market Square P#2598\Lease Drafts\L1\74393 LSS(LEO).docx
EBB/LEO/LMP/CEG
I-L:0#24201
March 26, 2021

E.    Any and all rights and remedies which Lessor may have under this Lease and any rider hereto attached and made a part hereof and at law or in equity shall not be deemed inconsistent with each other, and any two or more or all of such rights and remedies may be exercised at the same time.    In the event of default by Lessee, Lessor shall have the option to terminate, without additional notice, any lease agreement between Lessor (or any of its affiliates) and Lessee (or any of its affiliates).

HOLDING OVER

11.    In the event that Lessee shall remain in the Demised Premises after the expiration of the term of this Lease without having executed a new written Lease with Lessor, such holding over shall not constitute a renewal or extension of this Lease.    Lessor may, at its option, elect to treat Lessee as one who has not removed at the end of his term, and thereupon be entitled to all the remedies against Lessee provided by law in that situation, or Lessor may elect, at its option, to construe such holding over as a tenancy from month to month, subject to all the terms and conditions of this Lease except as to duration and rental which Lessor and Lessee agree shall increase to double the amount of the rental last in effect.

CONDITION OF PREMISES

12.    Lessee has examined the Demised Premises and accepts them in their present condition except as otherwise expressly provided herein and without any representations on the part of Lessor or its agents as to the present or future condition as the reasonable use thereof will permit.

MECHANIC'S LIEN

13.    Lessee has no authority or power to cause or permit any lien or encumbrance of any kind whatsoever, whether created by act of Lessee, operation of law, or otherwise, to attach to or be placed upon Lessor's title or interest in the Shopping Center or Demised Premises, and any and all liens and encumbrances created by Lessee shall attach to Lessee's interest only. In order to comply with the provisions of Section 713.10, Florida Statutes, it is specifically provided that neither Lessee nor anyone claiming by, through or under Lessee, including, but not limited to, contractors, subcontractors, materialmen, mechanics and laborers, shall have any right to file or place any mechanics' or materialmen's liens of any kind whatsoever upon the Demised Premises, the Shopping Center or improvements thereon, and any such liens are hereby specifically prohibited.    All parties with whom Lessee may deal are put on notice that Lessee has no power to subject Lessor's interest to any mechanics' or materialmen's lien of any kind or character, and all such persons so dealing with Lessee must look solely to the credit of Lessee, and not to Lessor's interest or assets.    In the event that any such lien is filed against the premises as a result of alterations, additions or improvements made by or on behalf of Lessee, Lessor, at its option, after thirty (30) days' notice to Lessee may pay the said lien and Lessee shall forthwith reimburse Lessor the total expense incurred by Lessor (including but not limited to reasonable attorney fees) in procuring the discharge or bonding the said lien, as additional rent hereunder.

8

Please initial  **LL**

J.\lease\RALEIGH\LEO\R\tas lee 1 #74393 - Market Square P#2598\Lease Drafts\LL\74393 LS5(LEO).docx
EBB/LEO/LMP/CEG
11-4/72420
March 26, 2021

EMINENT DOMAIN

14.   If the property or any part thereof wherein the Demised Premises are located shall be taken by public or quasi-public authority under any power of eminent domain or condemnation, this Lease, at the option of Lessor shall forthwith terminate.   Notwithstanding the foregoing, Lessee shall have the right to claim and recover from the condemning authority but not from Lessor or from Lessor's award, such compensation as may be separately awarded by the condemning authority in Lessee's own right or account for or on account of any cost or loss which Lessee might incur for the value of or removing of Lessee's merchandise, furniture, fixtures and equipment from the Demised Premises.

ACCELERATION

15.   This paragraph is intentionally deleted.

DESTRUCTION OF PROPERTY

16.   In the event of the destruction of the Demised Premises or the building containing the Demised Premises by fire, explosion, the elements or otherwise, during the term hereby created or previous thereto, or such partial destruction thereof as to render the Demised Premises wholly untenantable or unfit for occupancy, then the Lessor shall have a period of thirty (30) days from the date of such destruction or partial destruction of the Demised Premises to determine, at its election whether the Demised Premises should be rebuilt, and Lessor thereafter shall have a period of one hundred twenty (120) days from the date of commencement of repairs or reconstruction of the Demised Premises to rebuild the Demised Premises to the same condition as upon initial delivery thereof to Lessee. Notwithstanding the foregoing, the term hereby created, at the option of the Lessor, shall cease and become null and void from the date of such damage or destruction; and if such option is exercised the Lessee shall immediately surrender Demised Premises and all Lessee's interest therein to Lessor and shall pay rent only to the time of such surrender. However, should the Demised Premises be rendered wholly or partially untenantable and unfit for occupancy but yet be repairable, at the Lessor's election the Lessor shall repair the same with reasonable promptness, and in that case the rent accrued and accruing shall not cease. Lessee shall immediately notify Lessor in case of fire or other damage to the premises.    No claim shall be made by the Lessee in any case for compensation or damages by reason of interruption of its business through any such destruction and damage to the Demised Premises or arising from the necessity of repairing any portion of the entire premises of which the Demised Premises are a part.

BUILDING RULES

17.   The rules and regulations of Lessor regarding the Demised Premises affixed to this Lease, if any, as well as those reasonable rules and regulations which shall hereafter apply to the premises of which the Demised Premises forms a part, shall be observed by Lessee and by Lessee's guests;

Please initial

LL

J:\lease\RALEIGH LEO\Roma Ice 1 #74393 - Market Square P#2598\Lease Drafts\L1 74393 LS5(LEO).docx
EBB/LEO/LMP/CEG
H1 #72426
March 26, 2021

invitees, licensees, employees, agents and customers. Merchandise display, sales or storage on the sidewalks is prohibited. Lessee and its employees shall park their cars only in the areas designated by Lessor.

GLASS

18.    Lessee agrees to replace at Lessee's expense any and all glass and molding which may become broken or in need of repair in and on the Demised Premises.

LIABILITY

19.    A.    The Lessee further covenants and agrees with the Lessor that during the term of this Lease and for such other times as the Lessee shall hold or have access to the Demised Premises, that, (a) the Lessor and its affiliates shall not be liable to the Lessee or to any other person (i) for any claim, injury, loss or damage to any person or property on or about the Demised Premises or the sidewalks adjacent thereto unless due to the gross negligence of willful misconduct of the Lessor, or (ii) for any legal or administrative proceedings relating to Lessee in which Lessor is made a party without Lessor's default and (b) the Lessee will save the Lessor and its affiliates, ground lessor(s), and mortgagee(s), if any, harmless and indemnified from and against such claim, injury, loss or damage (including defense costs). Lessee agrees to provide liability insurance with $3,000,000.00 combined single limits for bodily injury and property damage. Insurance policies will be written in the names of the Lessee with Lessor, its ground lessor(s) and/or mortgagee(s), if any, named as additional insureds, and Lessee shall provide Lessor with certificates evidencing such policies upon execution of this Lease and shall thereafter provide Lessor with appropriate evidence of such coverages upon each anniversary date of the policy.

B.    In the event Lessee's operations at the Demised Premises include the sale, distribution or storage of alcoholic beverages then the foregoing insurance policy shall be endorsed to include liquor liability insurance (a/k/a "dram shop insurance") written on an occurrence basis.

C.    Lessor hereby releases Lessee, to the extent of Lessor's insurance coverage, from any and all liability for any loss or damage caused by fire or any of the extended coverage casualties, even if such fire or other casualty shall be brought about by the fault or negligence of Lessee or any persons claiming under it, provided, however, this release shall be in force or effect only with respect to loss or damage occurring during such time as Lessor's policies of fire and extended coverage insurance shall contain a clause to the effect that this release shall not affect said policies or the right of Lessor to recover thereunder. Lessor agrees that its fire and extended coverage insurance policies will include such a clause so long as the same is obtainable and is includible without extra cost, or if extra cost is chargeable therefore, so long as Lessee pays such extra cost. If extra cost is chargeable therefore, Lessor will advise Lessee thereof and of the amount thereof.

Please initial

LL

J:\lease\RALEIGH\LEO\Ritas Ice I #74393 - Market Square P#25983\Lease Drafts\LI\74393.LS5(LEO).docx
EBB/LEO/LMP/CFG
[illegible]
March 26, 2021

D.    Lessee hereby releases Lessor, to the extent of Lessee's insurance coverage, from any and all liability for any loss or damage caused by fire or any of the extended coverage casualties, even if such fire or other casualty shall be brought about by the fault or negligence of Lessor or any persons claiming under it, provided, however, this release shall be in force or effect only with respect to loss or damage occurring during such time as Lessee's policies of fire and extended coverage insurance shall contain a clause to the effect that this release shall not affect said policies or the right of Lessee to recover thereunder. Lessee agrees that its fire and extended coverage insurance policies will include such a clause so long as the same is obtainable and is includible without extra cost, or if extra cost is chargeable therefore, so long as Lessor pays such extra cost. If extra cost is chargeable therefore, Lessee will advise Lessor thereof and of the amount thereof.

CARE OF PREMISES

20.    A.    Lessee further agrees as follows: (a) to pay all utility charges promptly, (b) to make all repairs and replacements in a workmanlike manner, (c) to keep the Demised Premises and platform, loading dock or service areas used by Lessee in good, healthful and clean condition, (d) to prevent the Demised Premises from being destroyed or damaged by fire, the elements or otherwise, (e) to cause the sidewalks adjacent to Demised Premises to be kept free of rubbish and merchandise, (f) not to obscure the windows with blinds, film or other window treatments without Lessor's consent (unless as otherwise expressly permitted or approved in this lease), (g) not to overload the floors, (h) not to paint on the exterior of Demised Premises, (i) not to use the Demised Premises in a manner which creates a nuisance or which disturbs any other tenants or occupants of neighboring property, and (j) store, and periodically install, when necessary, hurricane shutters (if Lessor elects to supply such hurricane shutters).

B.    Lessee shall be responsible for its own trash removal at its own cost. In the event Lessor elects to furnish "community" or shared dumpsters for Lessee's use, then, in addition to any other charges payable hereunder, Lessee shall pay Lessor its pro-rata share of such dumpster costs, as follows: Lessee's pro-rata share shall be based on a fraction, the numerator of which is the size of the Demised Premises and the denominator of which is the total square footage of all tenants utilizing such dumpster(s), provided that if any restaurant shares such service with non-restaurant uses, then the numerator for each restaurant shall be three (3) times its actual leased footage. In no event shall Lessee deposit medical waste or any hazardous materials into such shared dumpster.

21.    This paragraph is intentionally omitted.

REDEMPTION

22.    The Lessee expressly waives, forfeits, surrenders and releases the Lessor from the operation of any provision of law now in force or which may be hereafter enacted, giving the Lessee the right under any conditions after default, to the redemption and repossession of the Demised Premises of any

Please initial
LL

J.\lease\RALEIGH\LEO\Ritas Ice I #74393 - Market Square P#2598\Lease Drafts\LI.\74393 LS5(LEO) docx
FBB/LEO/LMP/CFG
11-07;3429
March 26, 2021

part thereof.

COMMON AREA MAINTENANCE

23.   A.    As additional rent, Lessee shall pay to Lessor, as its fixed share
of common area maintenance and insurance costs five dollars and fifty cents
($5.50) per square foot of the Demised Premises (pro-rated for any partial
year) from the Commencement Date through December 31 of the same year.  Such
amount shall be payable in equal monthly installments together with base rent
and shall automatically increase three percent (3%) per year on January 1
of each subsequent year.  Lessee shall pay the foregoing additional rental
without offset or deduction together with minimum base rent.

      B.    Upon the date of any expiration or termination of this Lease,
whether the same be the date herein set forth for the expiration of the term
or any prior or subsequent date, the entire amount of additional rent herein
provided for shall immediately become due and payable by Lessee to Lessor.
Lessee's obligation to pay any and all accrued additional rent under this
Lease shall survive any expiration or termination of this Lease.  Lessee's
failure to make written objection to any charges or to any statement within
thirty (30) days from its receipt shall constitute its conclusive acceptance
of same, and in the event Lessee timely objects to any specific common area
maintenance it shall nonetheless remit payment for all other charges.

DEVELOPMENT CONTINGENCY

24.   This paragraph is intentionally deleted.

ILLEGAL ENTRY

25.   Lessee shall be responsible for damage to the Demised Premises as a
result of illegal entry therein or trespass thereupon.

MERCHANTS ASSOCIATION

26.   The Lessee agrees that if a merchants association is formed by the
tenants in the Shopping Center, the Lessee will join such association.

BUSINESS OPERATION

27.   The Lessee covenants and agrees that it will, during the entire term
of this Lease, operate the business for which the Demised Premises are leased,
and will not permit the Demised Premises to become closed or out of operation
unless for some reason beyond the Lessee's control.  The Lessee agrees to be
open for business seven (7) days a week (Monday - Sunday) every month of the
year, for the hours of ten (10) AM - nine (9) PM. Lessee is not required to
be open on Nationally recognized American holidays (i.e. Christmas Day) which
will exclude Memorial Day, the Fourth of July, and Labor Day of which Lessee
shall be open.

FINANCIAL DATA

12

Please initial 
LL

J:\lease\RALEIGH\LEO\Ritas Ice I.#74393 - Market Square P#2598\Lease Drafts\LL\74393 LS5(LEO) docx
EBB/LEO/LMP/CEG
[1 472420]
March 26, 2021

28.    Lessee and Guarantor (if any) shall cooperate with Lessor in every reasonable respect to assist Lessor in securing financing on the Demised Premises, including, but not by way of limitation, supplying to Lessor detailed certified financial statements and factual background of Lessee and Guarantor (if any). Lessor may also obtain consumer credit reports and other credit information, which may be reasonable, on Lessee and/or its guarantors (if any) from time to time. Additionally, upon Lessor's request, Lessee shall submit to Lessor, within forty-five (45) days of Lessor's request therefor, a statement certified by Lessee of the Gross Sales for the preceding twenty-four (24) month period (or lesser period, if Lessee has not been open for the immediately preceding twenty-four (24) month period). "Gross Sales", as used herein, shall mean the amount of sales of all merchandise and/or services sold or rendered in or from the Demised Premises by Lessee or any sublessees, licensees or concessionaires, whether for cash or on a charge, credit or time basis.

LESSOR'S RIGHT OF RECAPTURE

29.    Lessor shall have the right of recapture to take over the space occupied by the Lessee should the Lessee wish to assign this Lease, sublet or vacate the Demised Premises or any part thereof before the expiration of said Lease, at the rental the Lessee is paying.

TAXES

30.    A.    As additional rent Lessee shall pay its proportionate share of all real property taxes and assessments or governmental impositions in lieu thereof, be they special or otherwise of every kind and nature (including without limitation, assessments for public improvements or benefits whether or not commenced during the term of this Lease), water, sewer and other rents, rates and charges, excises, levies, license fees, permit fees and other authorization fees, public dues and all other charges (in each case whether general or special, ordinary or extraordinary, or foreseen or unforeseen), of every character (including all penalties or interest thereof, if incurred due to Lessee's late payment), which at any time during or in respect of the term of this Lease may be assessed, levied, confirmed, or imposed by any federal, state or local governmental authority, by any community improvements district, community development district or any similar body having jurisdiction over any portion of the center or which may be a lien upon, or measured by the value or amount of (a) the Demised Premises or any part thereof, including any personal property, any rent therefrom or any estate, right or interest therein, or (b) any occupancy, use or possession of the Demised Premises or any part thereof (other than any franchise, capital stock or similar tax of Lessor, or any income or excess profit tax of Lessor or portion thereof determined on the basis of its general income or revenues) together with a charge equal to twenty percent (20%) of the foregoing ("Taxes").    Lessee agrees that should Lessor receive tax abatement or exemption on any portion of the premises of which the Demised Premises forms a part, then for purposes of determining Lessee's proportionate share the term Taxes shall include an amount equal to the taxes which would have been payable in the absence of any such abatement or exemption amount.    The foregoing additional rental shall be paid within ten (10) days of Lessor

Please initial

LL

J:\lease\RALEIGH\LEO\Ritas Ice I #74393 - Market Square P#2598\Lease Drafts\LL\74393 LS5(LEO).docx
LBB/LEO/LMP/CEG
11 +92429
March 26  2021

billing Lessee therefor.  Lessor reserves the right to have Lessee establish
a tax escrow with Lessor.  In such event Lessee shall pay to Lessor an amount
equal to one (1) year's taxes attributable to the Demised Premises and
thereafter Lessee shall pay to Lessor a monthly amount reasonably determined
by Lessor to cover the next tax bill.  If at any time there is a shortfall
in said account Lessee shall pay such shortfall to Lessor within ten (10)
days of demand therefor.  Lessee's proportionate share shall be based upon
the ratio of the square feet of the Demised Premises to the total square feet
of the leasable store area of the premises covered by such tax bill.

      B.      Notwithstanding the foregoing, if the Demised Premises are a part
of a larger parcel, Lessor may have the Demised Premises separately assessed.
In the event Lessor shall be unable to obtain a separate assessment, Lessor
may obtain an identifiable breakdown of Taxes attributable to the Demised
Premises.

      If Lessor is able to obtain from the assessor's office a separate
assessment of Taxes attributable to the Demised Premises and the improvements
thereon, then Lessee shall pay Lessor in equal monthly installments, the
amount of Taxes so separately assessed.  If no separate assessment is obtained
but Lessor is able to obtain an identifiable breakdown of Taxes allocable to
improvements on the Demised Premises then Lessee shall pay to Lessor, in
equal monthly installments (i) the amount of Taxes separately identified for
the improvements, and (ii) the Taxes attributable to the land of the Shopping
Center as prorated based on the ratio of the square footage of building on
the Demised Premises to the total square feet of the leasable store area of
the premises covered by such tax bill.

COVENANT AGAINST WITHHOLDING OF RENTAL

31.  Notwithstanding any other provisions contained in this Lease or any
extensions, modifications or renewals thereof, it is understood and agreed
that in the event of default in performance of any agreement, condition, or
other provisions to be performed by the Lessor, or if for any other reason
Lessee might be entitled to any reimbursement from Lessor, and only in the
event of a Court Order requiring the rent to be deposited into a court
registry, in no other event shall Lessee deduct or withhold any such amount
from rental payments due Lessor pursuant to the rental provision of this
Lease.

MONTHLY RENTAL STATEMENTS

32.  The Lessor shall not be required to send to Lessee monthly statements
for rentals due or to become due under the terms and conditions of this
Lease.  However, it is expressly agreed that monthly past due reminders shall
constitute notice of default.

BUILDING MAINTENANCE

33.  Lessor shall repair and maintain the foundation, roof and exterior
walls.  Lessee shall at all times keep the remainder of the Demised Premises
in first class condition, including but not limited to plumbing, service

14                                        Please initial

**LL**

J:\lease\RALEIGH\LEO\R\tas lce I #74393 - Market Square P#2598\Lease Drafts\LL\74393 LSS(LEO) docx
EBB/LEO/LMP/CEG
LL -#74420
March 26, 2021

lines, heating, ventilating and air conditioning systems, lighting fixtures and equipment and shall repair or replace such fixtures or equipment when the same become inoperative and at the end of the term, shall quit and surrender such Demised Premises in such condition, and broom clean.

LIGHTING FIXTURES

34.   Lessee shall replace and pay for all electric bulbs, lamps, fluorescent tubes, ballasts and starters as they become inoperative.

ALTERATIONS TO DEMISED PREMISES

35.   In the event that any governmental authority directs any modification or alteration to the Demised Premises as the result of Lessee's occupancy, Lessee shall pay for the cost of such modification or alteration.

SERVICE CONTRACT

36.   If the Demised Premises includes a heating and/or air conditioning unit Lessee shall enter forthwith into a contract, subject to the Lessor's reasonable approval, for quarterly service, maintenance and repairs of the heating and air-conditioning units in the Demised Premises, which are or may become part of the Demised Premises.  Lessee shall pay for and keep said contract in force during the Lease term and any renewal or extension thereof and will supply Lessor with a copy of said contract on a quarterly basis along with quarterly certification by the inspecting company that the heating and air-conditioning units are in good working order.

CONTINUED RENTAL OBLIGATION

37.   If, for any reason, Lessee discontinues the use of the Demised Premises for the purposes rented or any purpose, Lessee shall still remain liable for the performance of the terms of this Lease and the payment of the rental thereunder.

38.   This paragraph intentionally deleted.


INVALIDITY OF PARTICULAR PROVISION

39.   If any term or provision of this Lease or the application thereof to any party or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Lease, or the application of such term or provision to parties or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term and provision of this Lease shall be valid and enforceable to the fullest extent permitted by law.

PROTEST OF REAL ESTATE TAXES

40.   In the event the Lessor elects to protest the real estate taxes assessed against the Demised Premises and such protest shall result in a reduction of

15                                    Please initial

**LL**

J:\lease\RALEIGH\LEO\Ritas Ice L#74393 - Market Square P#2598\Lease Drafts\LL\74393 LS5(LEO).docx
EBB/LEO/LMP/CEG
LL#72420
March 26, 2021

such assessment, the Lessee agrees to pay its reasonable pro-rata share of the legal fees incurred thereby but in no event shall the share be greater than the savings.

WATER DAMAGE

41.   Notwithstanding anything in this Lease to the contrary, Lessor shall have no responsibility for any loss sustained by Lessee as the result of damage caused by flood waters or any other water damage, unless due to Lessor's gross negligence or willful misconduct provided Lessor has been given notice of any repair obligation (which is the responsibility of Lessor under this Lease) and a reasonable opportunity to cure.

CARPETING

42.   Lessee may not, without the consent of the Lessor, fasten rubber-backed carpeting to the floor of the Demised Premises with adhesives of any kind.

RETURNED CHECKS

43.   For a check sent in full or partial payment of any amounts owed pursuant to this Lease, or any rider thereto or modification thereof, which is not honored because of insufficient funds, uncollected funds or any other reason, there will be assessed a charge of $50.00 and all subsequent payments shall be made by cash, bank draft, certified check or money order.

OUTSIDE PREMISES

44.      Lessee agrees that there shall be no outdoor storage or sales. Notwithstanding the foregoing, Lessee may place, at its sole cost and expense, an outdoor patio area for a limited number of tables, umbrellas and chairs in the area directly adjacent to the Demised Premises, which currently consists of a flower bed, with the exact location and size to be directed by Lessor (the "Patio Area"). The Patio Area is subject to Lessor's prior written approval, which shall not be unreasonably withheld, of Lessee's plans (including design plan), specifications and furnishings for the Patio Area and further subject to Lessee satisfying all municipal rules, regulations and ordinances.   Lessee shall be solely responsible for obtaining necessary municipal permits and approvals for the Patio Area.   Lessee agrees all furniture shall be in first-class, new condition and shall be pre-approved by Lessor. Lessee shall be solely responsible for maintenance of the Patio Area, including but not limited to keeping the surrounding area free from litter and debris.   Lessee shall powerwash the Patio Area at least one time bi-weekly throughout the term of the Lease (including any extensions and/or renewals) and any other time to ensure the Patio Area remains in first-class condition.   In the event Lessee fails to powerwash the Patio Area as set forth above, Lessor shall have the right to powerwash the Patio Area and charge the cost of such to Lessee, which shall be immediately due and payable to Lessor.   At all times Lessee shall maintain the Patio Area in a manner that will not impede ingress and egress to or from any other tenant's premises in the Shopping Center or to or from any part of the common areas of the Shopping Center.   Notwithstanding the foregoing, the Patio Area is not a part

Please initial

LL

J:\lease\RALEIGH\LEO\Ritas Ice L#74393 - Market Square P#2598\Lease Drafts\L1\74393 L.S5(LEO).docx
EBB/LEO/LMP/CEG
FL-072420
March 26, 2021

of the common area of the Shopping Center and Lessee may restrict non-patrons from unreasonably using the Patio Area, provided that restriction does not interfere with the non-Rita's patrons access to or use of the Shopping Center or its' common area. Lessee shall provide liability insurance for the Patio Area pursuant to the terms set forth in Paragraph 19 of this Lease. Lessee further covenants and agrees with Lessor that during the term of this Lease and for such other times as the Lessee shall hold or have access to the Demised Premises, that, (a) Lessor and its affiliates shall not be liable to Lessee or to any other person for any claim, injury, loss or damage to any person or property on or about the Patio Area, and (b) Lessee will save Lessor harmless and indemnified from and against such claim, injury, loss or damage (including defense costs).

INCREASE IN TAXES

45.   Any increases in taxes resulting from construction or improvements made by or for the benefit of Lessee shall be paid solely by Lessee.

LESSOR'S WORK    LL (#)5/3/21

46.   A.   Lessor shall ~~deliver the Demised Premises to the Lessee with the existing HVAC unit(s) serving the Demised Premises in good working order~~ install one 5 ton HVAC rooftop unit. Except as otherwise provided herein this Paragraph 46.A, Lessee accepts the Demised Premises in "AS-IS" condition. Any work performed by Lessor at the request of Lessee shall be paid for by Lessee.

B.   Any work to be performed by Lessee shall be at Lessee's sole cost and expense and Lessee shall not commence any work until (i) two (2) sets of plans and specifications are submitted and approved by Lessor in writing and (ii) Lessee furnishes Lessor with a copy of its building permit authorizing such work. Upon completion Lessee shall furnish Lessor with a copy of the certificate of occupancy from the municipality. A preliminary fixture plan, which includes Lessor's contingent approval notes and conditions, is shown on Exhibit B attached hereto and incorporated herein. The aforementioned plan is subject to change after Lessor's review of Lessee's final plan and is subject to Lessor's final review and approval.

C.   In the event Lessee or individuals or entities directed by Lessee performs any work at the Demised Premises under a lawfully valid permit obtained by or on behalf of Lessor, or utilizes Lessor's general contractor in the build-out of Lessee's work (any such circumstance hereinafter called a "Work Facilitation"), then in such instances Lessee does hereby agree to defend, indemnify and hold Lessor, Lessor's affiliate(s) (including, but not limited to, Benderson Development Company, LLC), the holder of the license under which such permit is obtained, the qualifying agent and financial responsibility officer(s) harmless from and against any and all liens, judgments, penalties, amounts paid or payable in settlement, fines, claims, injuries and damages (including reasonable attorney fees and costs) arising from or relating to any Work Facilitation.

D.   Lessor may elect to seek certification from the municipality or other governing authority (such as the Florida Green Building Coalition

Please initial   LL

J:\lease\RALEIGH\LEO\Ritas Ice I #74393 - Market Square P#2598\Lease Drafts\I 1\74393 LS5(LEO).docx
FBB/LEO/LMP/CFG
11 #72420/
March 26, 2021

Inc.) for so-called "green development" certification. In such event Lessee will use good faith efforts to comply with green building standards for work now or hereafter performed by Lessee. Lessor supports green building standards and does not, as a matter of policy, prohibit green practices in Lessee construction.

E.    Provided Lessee is not in default in the performance of any of the terms and conditions of this Lease beyond any applicable notice and cure period and Lessee is operating the Demised Premises pursuant to Paragraph 2 of this Lease, Lessee shall receive a payment in the amount of $30,000.00 for its work being done at the Demised Premises within thirty (30) days of the last of the following to occur: (i) Lessee completing Lessee's work, (ii) Lessee providing Lessor with lien waivers and paid invoices from all contractors performing work at the Demised Premises, (iii) Lessee opening for business at the Demised Premises and paying the first month's rent pursuant to the Lease, and (iv) Lessee executing the supplemental agreement as set forth on page 1 of this Lease and sending Lessor an invoice for payment.

SIGNAGE

47.    A.    Prior to the Commencement Date Lessee shall erect a sign on the exterior (front) of the Demised Premises which shall consist of individual letters pursuant to Lessor's specifications for the Shopping Center from time to time. In addition, subject to Lessor's prior written approval and any municipal or governmental code or approvals, Lessee may be permitted to have a "Rita's Coming Soon" or "Rita's Grand Opening" or "Rita's Opening Soon" sign ("Coming Soon Sign"). Lessor shall approve the size, location, design, length of display time, materials and any other component of the Coming Soon Sign prior to its display. Lessee shall repair, clean or otherwise maintain such signage as may be reasonably required by Lessor, and upon Lessee's failure to so comply Lessor may repair or clean such signage at Lessee's expense and upon demand Lessee shall reimburse Lessor such costs as additional rent hereunder.    The location, design and material used for said sign are subject to the written consent of Lessor, such consent to be obtained prior to the installation.    Upon the termination of this Lease, Lessee or Lessor shall cause such sign letters to be removed by a competent sign company and Lessee shall immediately pay to Lessor the cost of repairing any damage to the exterior of the building. The installation of the aforesaid signage is to be done by Lessee as and when so directed by the written authorization of Lessor.

B.    Lessee agrees that no blinds, shades or window treatments shall be visible in any exterior windows without Lessor's prior written consent (which may be withheld in Lessor's sole discretion). If any unauthorized window treatments are installed without Lessor's consent and not removed within 48 hours from Lessor's written notice then Lessor may enter the Demised Premises (during regular business hours) and remove same.

SECURITY

48.    Upon signing this Lease, Lessee shall deposit with Lessor $8,441.32 as

Please initial  LL

J:\lease\RALEIGH\LEO\Ritas Ice L#74393 - Market Square P#2598\Lease Drafts\LL\74393 LS5(LEO).docx
EBB/LEO/LMP/CEG
FT 4072426
March 26, 2021

security for Lessee's payment of rent and performance of its other obligations under this Lease. If Lessee defaults in its payment of rent, additional rent or performance of its other obligations under this Lease, Lessor may apply all or part of the security to such default. If Lessor so applies any portion of the security, Lessee will restore the security to its original amount within ten (10) days after written demand from Lessor. If Lessee pays the rent and performs all of its other obligations under this Lease, Lessor will return the unused portion of the security after the end of the term. The security will not be a limitation on Lessor's damages or other rights under this Lease or an advance payment of the rent. Lessor may deliver the security to a purchaser of the premises and be discharged from further liability with respect to it. Lessor will not be required to keep the security separate from its general funds and Lessee will not be entitled to interest thereon. In the event the security deposit is not paid by Lessee within fifteen (15) days from the date of this Lease then Lessor may, any time prior to its receipt of the security deposit, terminate this Lease on written notice to Lessee. Lessor warrants that in the event of a transfer of ownership of the Shopping Center that Lessor shall transfer Lessee's security (as defined herein) to any subsequent owner.

COLLECTION COSTS

49.  All costs charged to or incurred by  the prevailing party in the enforcement of its rights under this Lease (whether incurred out of court, at trial, on appeal or in bankruptcy proceedings), including reasonable attorney's fees and court costs and other expenses, shall be paid by the non-prevailing party.  All costs charged to or incurred by Lessor in the collection of any amounts owed pursuant to this Lease (whether incurred out of court, at trial, on appeal or in bankruptcy proceedings), including reasonable attorney's fees and court costs and other expenses, shall be paid by Lessee; and, at the option of Lessor, shall be deemed to be additional rent hereunder and shall be due from Lessee to Lessor on the first day of the following month.

TELEPHONE LINES

50.  Lessee shall be responsible for the installation and maintenance of any telephone lines which service the Demised Premises.  All telephone lines shall be installed in a good, workmanlike manner at Lessee's cost and expense.

OPTION

51.  A.   If the Lessee has not been in default under any of the terms and conditions of this Lease, and provided that Lessee is continuously operating its business in the Demised Premises, Lessee shall have the option of renewing this Lease for an additional term of five (5) years after the expiration of the original term upon the same terms and conditions except for a new annual rental of $52,167.33 payable in equal monthly installments of $4,347.28 each for the first year, a new annual rental of $53,732.35 payable in equal monthly installments of $4,477.70 each for the second year, a new annual rental of $55,344.32 payable in equal monthly installments of $4,612.03 each for the third year, a new annual rental of $57,004.65 payable in equal monthly

Please initial

LL

J.\lease\RALEIGH\LEO\Ritas Ice 1 #74393 - Market Square P#2598\Lease Drafts\LL\74393 LS5(LEO) docx
EBB/LEO/LMP/CEG
(T-072420
March 26, 2021

installments of $4,750.39 each for the fourth year, and a new annual rental of $58,714.79 payable in equal monthly installments of $4,892.90 each for the fifth year provided that the Lessor receives notice by registered or certified mail of Lessee's exercise of such option at least nine (9) months prior to the expiration of this Lease, time being of the essence. Lessee agrees that this option to extend the term of the Lease is personal to Lessee and is not available to any assignee or successor-in-interest to Lessee.

B.    If the Lessee has not been in default under any of the terms and conditions of this Lease, and provided that Lessee is continuously operating its business in the Demised Premises, Lessee shall have the option of renewing this Lease for an additional term of five (5) years after the expiration of the first option term upon the same terms and conditions except for a new annual rental of $60,476.24 payable in equal monthly installments of $5,039.69 each for the first year, a new annual rental of $62,290.52 payable in equal monthly installments of $5,190.88 each for the second year, a new annual rental of $64,159.24 payable in equal monthly installments of $5,346.60 each for the third year, a new annual rental of $66,084.02 payable in equal monthly installments of $5,507.00 each for the fourth year, and a new annual rental of $68,066.54 payable in equal monthly installments of $5,672.21 each for the fifth year provided that the Lessor receives notice by registered or certified mail of Lessee's exercise of such option at least nine (9) months prior to the expiration of the first option term, time being of the essence. Lessee agrees that this option to extend the term of the Lease is personal to Lessee and is not available to any assignee or successor-in-interest to Lessee.

HAZARDOUS SUBSTANCES

52.    A.    Lessee shall not conduct any activities with respect to the Demised Premises or the development which result in the generation, storage or release of any toxic, hazardous or similar substances (as those terms may be defined from time to time in any federal, state or local law, rule or regulation). Lessee shall bear all liability for any claim, injury, loss or damage to any person or the environment as a result of any such toxic, hazardous or similar substances and Lessee will save Lessor harmless and indemnify Lessor against any such loss, claim, injury or damage.

B.    Use of Demised Premises.    Within sixty (60) days after the execution of this Lease, Lessee shall furnish Lessor with all Standard Industrial Classification Numbers as issued by the United States, the state in which the Demised Premises are located or any other governmental authority ("SIC"), which relate to the business of Lessee and the use and purposes for which the Demised Premises shall be utilized.

C.    Environmental Cleanup.    At the end of the Lease term, including any renewal or extension thereof, Lessee will provide Lessor with any environmental clearance which may be required by any governmental authority having jurisdiction.    Until such time as the Demised Premises are delivered to the Lessor by the Lessee in a "clean" condition, as specified by law, Lessee will pay to Lessor the monthly rental based upon the then fair market value during said interim period, and will notify Lessor at least ninety (90)

20                                    Please initial

LL

J.\lease\RALEIGH\LEO\Ritas Ice I #74393 - Market Square P#2598\Lease Drafts\LL\74393 LSS(LEO).docx
EBB/LEO/LMP/CEG
11.4/72420
March 26, 20/21

days prior to obtaining a clean condition report as specified by law.

D.    Prior to the Commencement Date, and thereafter upon the request of Lessor, Lessee agrees to deliver to Lessor a written statement detailing all processes, functions, procedures and other methods of operation used at the Demised Premises, a description of all materials to be stored at the Demised Premises and any changes, modifications or amendments thereto.

E.    Lessee further agrees to properly and accurately label and segregate all materials stored at the Demised Premises, as required by law. At all times during the term hereof, and upon the termination of the terms hereof, Lessee shall comply with all applicable environmental protection laws, rules or requirements, and shall promptly cure all violations thereof arising from its non-compliance, including but not limited to the preparation, delivery and/or filing with the applicable governmental authorities and with the Lessor, of all forms, certificates, notices, documents, plans and other writings, and the furnishing of such other information as may be required or requested by the Lessor, its mortgagee or any applicable governmental authority in connection with the sale, lease, transfer, mortgaging or other disposition of the building and/or lands. It is specifically acknowledged and agreed that the provisions of this paragraph shall survive the termination of this Lease, regardless of the reason or cause thereof.

CONTINUED OCCUPANCY

53.   A.    Lessee shall operate its business on the Demised Premises during the entire term of this Lease with due diligence and efficiency. Lessee shall install and maintain at all times, displays of merchandise in the display windows, if any, of the Demised Premises. Lessee shall keep the display windows and signs, if any, in the Demised Premises well lighted during such hours as are designated by the Lessor from time to time. Lessee shall not vacate or abandon the Demised Premises at any time during the term of the Lease except for any remodeling (which has been approved by Lessor prior to commencement which may not last for longer than thirty (30) days).

B.    The foregoing provisions governing Lessee's business operations are intended for the benefit of all tenants of the Shopping Center. If Lessee fails to maintain such above business operations, or vacates or abandons the Demised Premises, or fails to initially open its store upon commencement of the Lease term, Lessee acknowledges that Lessor will be damaged thereby in an amount not susceptible of exact computation. Therefore, Lessee in such event agrees that for each month such violations occur it shall pay Lessor as liquidated damages an amount equal to 25% of the minimum monthly rent, which damages shall be paid in addition to all rent due Lessor, and that such liquidated damages shall be in addition to and not in lieu of all other damages to which Lessor is entitled by law or by this Lease. The parties agree that in the event of a breach or threatened breach of the foregoing covenants, in addition to all of Lessor's other rights and remedies, at law or in equity, or otherwise, Lessor shall have the right of injunction to preserve Lessee's occupancy and use.

Please initial 
LL

J:\lease\RALEIGH\LEO\Ritas Ice 1 #74393 - Market Square P#2598\Lease Draft\#1 L74393 L55(LEO).docx
FBB/LEO/LMP/CEG
11-n-72420
March 26, 2021

PERSONAL PROPERTY

54.  Lessee shall, throughout the term of this Lease, insure (with an
insurance company licensed to do business in the state in which the Demised
Premises are located) its personal property, equipment and improvements for
full replacement value.  Lessee assumes all risk of damage to or destruction,
loss or pilferage of fixtures, personal property or any improvements Lessee
has made within the Demised Premises or any loss suffered by Lessee's business
resulting from any cause whatsoever and shall save and hold Lessor and its
affiliates harmless from all claims resulting therefrom.  Lessee shall have
the right, at the termination of this Lease, to remove any and all trade
fixtures, equipment and other items of personal property not constituting a
part of the leasehold which it may have stored or installed in the Demised
Premises, including but not limited to shelving, show cases, chairs and
movable machinery purchased by Lessee and which are susceptible of being
moved without damage to the Demised Premises, provided this right is exercised
before the Lease is terminated or during the ten (10) day period immediately
following such termination, and provided that Lessee shall repair any damage
to the Demised Premises caused hereby.  The right granted Lessee in this
paragraph shall not include the right to remove any plumbing or electrical
fixtures or equipment, heating or air-conditioning equipment, floor coverings
(including wall-to-wall carpeting), glued or fastened to the floors or any
paneling, tile or other materials fastened or attached to the walls or
ceilings all of which shall be deemed to constitute a part of the freehold,
and as a matter of course, shall not include the right to remove any fixtures
or machinery that were furnished or paid for by Lessor.  The Demised Premises
shall be left in a broom-clean condition subject to normal wear and tear,
fire and other casualty, acts of God, condemnation, and the negligent acts
or omissions of Lessor, its agents, servants or employees.   Any property
which Lessee is entitled to remove but does not shall be deemed abandoned by
Lessee, and, at the option of Lessor, shall become the property of Lessor
(or at the Lessor's option, shall be removed by Lessee at Lessee's expense).

ESTOPPEL CERTIFICATES

55.  Within fifteen (15) days after Lessor's written request therefor, Lessee
shall deliver to Lessor or to any prospective purchaser or mortgagee of the
Demised Premises a written statement certifying (if such is the case) that
this Lease is in full force and effect and has not been assigned, modified,
supplemented or amended; that all covenants, conditions and agreements on
the part of Lessor hereunder have been performed; and that there are no
defenses or offsets to the enforcement of this Lease by Lessor, or stating
those claimed by Lessee.

DEFINITION AND LIABILITY OF LESSOR

56.  A.   The term "Lessor" as used in this Lease means only the owner for
the time being of the building in which the Demised Premises are located or
the owner of a leasehold interest in the building and/or the land thereunder
so that in the event of sale of the building or an assignment of this Lease,
or a demise of the building and/or land, Lessor shall be and hereby is
entirely freed and relieved of all obligations of Lessor hereunder and it

22                          Please initial

LL

J:\lease\RALEIGH\LEO\Rntas Ice L #74393 - Market Square P#2598\Lease Drafts\LL:\74393 LS5(LEO) docx
EBB/LEO/LMP/CEG
LL-073420
March 26. 2021

shall be deemed without further agreement between the parties and such purchaser(s), assignee(s) or tenant(s) that the purchaser, assignee or tenant has assumed and agreed to observe and perform all obligations of Lessor hereunder. It is specifically understood and agreed that there shall be no personal liability of Lessor in respect to any of the covenants, conditions or provisions of this Lease. In the event of a breach or default by Lessor of any of its obligations under this Lease, Lessee shall look solely to the equity of Lessor in the Shopping Center (including proceeds from any rent) for the satisfaction of Lessee's remedies.

B. Lessor's Release following Transfer. In the event of any transfer or conveyance of title to the Demised Premises, Lessor herein named (or the then grantor if Lessor herein named shall have previously made such a transfer or conveyance) shall be automatically released of all liability as respects the performance of any and all obligations on the part of Lessor thereafter to be performed hereunder; provided, however, that the foregoing shall not be construed as a release of Lessor or the then grantor, as the case may be, for any obligations or liabilities which arose prior to the date of such transfer or conveyance and during such party's period of ownership.

PEST CONTROL

57. Lessee shall enter forthwith into a contract, subject to the Lessor's approval, for monthly pest control services at the Demised Premises. Lessee shall pay for and keep said contract in force during the Lease term and any renewal or extension thereof and will supply Lessor with a copy of said contract.

RADON NOTICE

58. Radon gas is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from the county public health unit in which the Shopping Center is located.

MEMORANDUM OR NOTICE OF LEASE

59. Upon request by Lessor, Lessor and Lessee agree to execute a Memorandum or Notice of Lease in recordable form pursuant to applicable state law. Upon the expiration or earlier termination of this Lease, the party who shall have recorded such Memorandum or Notice of Lease shall promptly execute any necessary instrument and remove the Memorandum or Notice of Lease from the public records, and upon failure to do so, the other party is hereby appointed attorney-in-fact to execute any such instrument in the recording party's name, place and stead. Lessor shall bear all fees associated with recording such Memorandum or notice of Lease.

CAPTIONS AND DEFINITIONS

60. Marginal captions of this Lease are solely for convenience of reference

23

Please initial

**LL**

J:\lease\RALEIGH\LEO\Ritas Ice L#74393 - Market Square P#2598\Lease Drafts\LL\74393 LS5(LEO) docx
EBB/LEO/LMP/CEG
FL-072420
March 26, 2021

and shall not in any way limit or amplify the terms and provisions thereof. The necessary grammatical changes which shall be required to make the provisions of this Lease apply, (a) in the plural sense if there shall be more than one Lessor, and (b) to any Lessor which shall be either a corporation, an association, a partnership or individual, male or female, shall in all instances be assumed as though in each case fully expressed. Unless otherwise provided, upon the termination of this Lease under any of the paragraphs hereof, the parties hereto shall be relieved of any further liability hereunder except as to acts, omissions or defaults occurring prior to such termination.

WAIVER OF COVENANT OR CONDITION

61.  The failure of Lessor to insist upon strict performance of any of the covenants or conditions of this Lease or to exercise any option herein conferred in any one or more instances shall not be construed as a waiver or relinquishment for the future of any such covenants, conditions or options, but the same be and remain in full force and effect.

GOVERNING LAW

62.  Lessor and Lessee agree that this Lease any claim, counterclaim, or other dispute arising out of or in connection with this Lease shall be governed by the laws of the state in which the Demised Premises are located. The parties acknowledge and agree that jurisdiction shall be in the State of Florida and that the venue shall be in the county in which the Demised Premises is located. It is further irrevocably and unconditionally agreed that (a) any suit, action or other legal proceeding arising out of or relating to this Lease shall be brought in the courts of record of the State of Florida in such county or the District Court of the United States, Middle District of Florida, situated in such county; (b) the parties consent to the jurisdiction of such court in any such suit, action or proceeding; and (c) waive any objection which it may have to the laying of venue of any such suit, action or proceeding in any such court.

NEGOTIATION AND EXECUTION

63.  The furnishing of this Lease to the Lessee by the Lessor shall not be considered an offer to lease, even though completed in every respect, until and unless the document has been executed by the appropriate officers of Lessor. No deposit of proposed rent or security deposit and no correspondence or other communication respecting this Lease shall create any obligation to go forward with this Lease until the Lease document is fully completed and executed by both the Lessor and Lessee. This Lease has been negotiated "at arm's length" by Lessor and Lessee, each having an opportunity to be represented by legal counsel.  Therefore, this Lease shall not be more strictly construed against either Lessor or Lessee by reason of the fact that one of them may have drafted this Lease.

MISCELLANEOUS

64.  A.   Lessee and Lessor each warrant and represent that the party

24

Please initial

LL

J:\lease\RALEIGH\LEO\Ritas Ice 1 #74393 - Market Square P#2598\Lease Drafts\LL\74393 LS5(LEO) docx
EBB/LEO/LMP/CFG
11 -/7242/
March 26, 2021

signing this Lease on behalf of each has authority to enter into this Lease
and to bind Lessee and Lessor; respectively, to the terms, covenants and
conditions contained herein.   Each party shall deliver to the other, upon
request, all documents reasonably requested by the other evidencing such
authority, including a copy of all corporate resolutions, consents or minutes
reflecting the authority of persons to enter into agreements on behalf of
such party.

   B.   Relationship of the Parties.   Nothing herein contained shall be
deemed or construed as creating the relationship of principal and agent or
of partnership or joint venture between Lessor and Lessee.

   C.   Additional Rent.   All taxes, charges, costs and expenses which
the Lessee is required to pay hereunder, together with all interest and
penalties which may accrue thereon in the event of Lessee's failure to pay
such amounts, and all damages, costs and expenses which the Lessor may incur
by reason of default by the Lessee or failure on the Lessee's part to comply
with the terms of this Lease, shall be deemed to be additional rent, and in
the event of nonpayment by the Lessee, the Lessor shall have all rights and
remedies with respect thereto as the Lessor has for the non-payment of base
rent referenced in this Lease.   Lessee agrees that its failure to object,
require documentation or otherwise challenge the validity of any invoice
within forty-five (45) days from Lessee's receipt shall render said statement
final, binding and due.

   D.   Prohibited Use.   Notwithstanding any provisions herein to the
contrary, Lessee shall not operate or display any pornographic material or
operate a business that is unsuitable for children to visit and patronize.

   E.   Force Majeure.   Both Lessor and Lessee shall be excused for the
period of any delay in the performance of any obligations hereunder, except
for the payment of any rent or sums due under the Lease which shall continue
to be paid in accordance with the terms herein, when prevented from doing so
by cause beyond either parties control, which shall include without
limitation all labor disputes, civil commotion, war, war-like operations,
invasion, rebellion, hostilities, military or usurped power, sabotage,
governmental regulation or controls, fire or other casualty, inability to
obtain any material, services or through acts of God.

COUNTERPARTS AND ELECTRONIC TRANSMITTAL

65.   This agreement may be executed in several counterparts each of which
when taken together shall be considered one and the same instrument and shall
constitute a binding agreement.   This agreement may be effected by electronic
means, (including pdf and/or certificate based digital signature), executed
and delivered by electronic copy or via facsimile, which such electronic copy
or facsimile signatures and delivery shall be valid and binding the same as
if original documents were delivered.

COMPETITION

66.   Provided the Lessee has not been in default of any terms and conditions

Please initial   LL

J:\lease\RALEIGH\LEO\Ritas Ice I #74393 - Market Square P#2598\Lease Drafts\LL\74393 LS5(LEO).docx
EBB/LEO/LMP/CEG
(T-672420
March 26, 2021

of the Lease beyond any applicable notice and cure period and has continuously operated its business in the Demised Premises pursuant to Paragraph 2, Lessor agrees not to lease any space in the Shopping Center to any other tenant whose primary purpose is the sale of Italian ice and soft serve custard. In the event of a violation of this Paragraph, Lessee shall notify Lessor of the violation in writing (which shall include the specifics of the violation) ("Violation Notice") and Lessee shall have the right, as its sole and exclusive remedy, to pay fifty percent (50%) of Lessee's base rent (Lessee shall continue to pay the full amount of additional charges including; but not limited to, real estate taxes, insurance and common area maintenance) for a period up to twelve (12) months from the date of receipt by Lessor of the Violation Notice, or upon the violation being cured, whichever is sooner. In the event such violation is not cured by the end of said twelve (12) month period, then Lessee shall either, (i) resume paying full base rent as scheduled in the Lease, or (ii) terminate this Lease on fifteen (15) days' notice to Lessor, within five (5) days of the expiration of the twelve (12) month period, time being of the essence, provided that if the violation is cured within the aforementioned fifteen (15) day period, Lessee's notice to terminate is null and void and the lease shall be in full force and effect with Lessee paying full base rent. If Lessee fails to terminate the lease within the above time frame (time is of the essence), Lessee shall immediately commence paying full rent then due under the Lease. The foregoing shall not be applicable to any lease in effect prior to the date of this Lease.

BROKERS AND AGENTS

67.   Lessor and Lessee warrant and represent each to the other that NAI Ulysses Realty ("Broker") is the only broker, finder or agent who has acted for either of them in connection with this Lease or the transaction contemplated hereby and that no other broker, finder or agent is entitled to any brokers', finders' or agents' fees, commission or other compensation in respect thereof based in any manner on any agreement, arrangement or understanding made by them. Lessor shall pay to Broker all fees, commissions and other compensation to which Broker is entitled. Lessor and Lessee each agree to indemnify and hold the other harmless for and from any and all claims arising from facts constituting a breach of the foregoing warranty and representation.

WALK-UP WINDOW

68.   Subject to Lessor prior written approval of any plans, specifications and methods of installation, Lessee shall have the right, at Lessee's sole cost and expense, and contingent upon and subject to any City, municipal or other governing authority approval and requirements, to install a walk-up window (for the sale of items permitted under the "Use" clause in Paragraph 2) in the storefront of the Demised Premises in a location to be mutually agreed upon by Lessor and Lessee. Lessee shall be solely responsible for obtaining all permits and approvals required to construct and operate such walk-up window.

FORCED CLOSURE

Please initial 

J:\lease\RALEIGH\LEO\Ritas Ice I #74393 - Market Square P#2598\Lease Drafts\LL\74393 LS5(LEO).docx
EBB/LFO/LMP/CFG
11-473450
March 26, 2021

68.   In the event any governmental authority having jurisdiction over the Demised Premises prohibits Lessee from operating its business at the Demised Premises as a result of any pandemic or epidemic, such as by way of example the coronavirus known a COVID-19, and if as a result thereof Lessee must temporarily discontinue its business at the Demised Premises in excess of thirty (30) days then the base annual rent shall thereafter be suspended (and Lessee shall continue to pay all additional charges due hereunder) until the sooner to occur of (i) the date such restrictions or limitations are lifted and Lessee is legally permitted to re-open for business, or (ii) the 91st day following the date it became unlawful for Lessee to operate its business at the Demised Premises. It is further agreed that the then-current Term shall be extended by the number of days equal to any period in which Lessee temporarily closes pursuant to this Section (and during such extension shall continue to pay the full rents then in effect hereunder).

PARKING

69.   Notwithstanding the foregoing, at Lessee's sole cost and expense, Lessee's customer's and invitees shall have the non-exclusive right to use two (2) common area parking spaces immediately adjacent to the Demised Premises for a period of no more than fifteen (15) minutes as shown on Exhibit A, provided that said parking spaces do not violate the rights, covenants and/or restrictions in the leases of other tenants of the Shopping Center and comply with all applicable laws, codes and regulations. Lessor shall not be required to enforce such parking and shall not be liable therefore. Lessor shall have the ability to relocate such parking spaces upon reasonable written notice to Lessee to a new location within the Shopping Center.

SELF-HELP

70.   Except for emergency scenarios reasonably necessary to protect the premises, in the event Lessor fails to perform any of Lessor's obligations under this Lease Lessee shall send Lessor a written notice detailing the obligation and any failures. In the event such failure continues for more than thirty (30) days after delivery of Lessee's notice specifying the nature thereof, Lessee shall send Lessor a five (5) day written reminder notice. If the failure is not cured after the expiration of the five (5) day period or if the failure is of a nature that would require more than thirty five (35) days to cure and continues beyond the time reasonably necessary to cure with the exercise of due diligence, Lessee may cure such failure and Lessor shall immediately, upon demand, pay to Lessee the reasonable and actual cost thereof.

**THIS INSTRUMENT SHALL MERGE ALL UNDERTAKINGS, REPRESENTATIONS, UNDERSTANDINGS AND AGREEMENTS WHETHER ORAL OR WRITTEN, BETWEEN THE PARTIES HERETO WITH RESPECT TO THE DEMISED PREMISES AND THE PROVISIONS OF THIS LEASE AND SHALL CONSTITUTE THE ENTIRE LEASE UNLESS OTHERWISE HEREAFTER MODIFIED BY BOTH PARTIES IN WRITING.  NEITHER PARTY HAS MADE ANY REPRESENTATIONS OR PROMISES EXCEPT AS HEREIN CONTAINED, AND NO MODIFICATION OF ANY PROVISION HEREOF SHALL BE VALID UNLESS IN WRITING AND SIGNED BY THE PARTIES HERETO.**

Please initial 
LL

J lease RATEIIoIFLFORtios Ice I~74593 - Market Square P62593 Lease Dratts LL 71593 FNSI FOdocs
LIBLLFOEMPOFG

March 26, 2021

initial here [_____] to indicate you have read,
understand and agree with the foregoing.

IN WITNESS WHEREOF, the Parties have hereunto set their hands and seals,
the corporate parties by their proper officers thereunto duly authorized,
as of the day and year first above written.

**LESSOR:**

MSF MARKET, LLC

Date: __05/06/2021__

By: _____
    Shaun Jackson, Counsel and
    Authorized Agent

**LESSEE:**

ICE RAF, LLC

Date: __April 8 2021__

By: _____

Print Name: __Regina Tullio__

Print Title: __MGR__

Tax ID#: __85-3156519__

Please initial __LL__

J:\lease\RALEIGH\LEO\Ritas Ice I.#74393 - Market Square P#2598\Lease Drafts\LL\74393 LS5(LEO).docx
EBB/LEO/LMP/CEG
FL-072420
March 26, 2021

EXHIBIT A
SITE PLAN



29

Please initial

J:\lease\RALEIGH\LEO\Ritas Ice I #74393 - Market Square P#2598\Lease Drafts\LL\74393 LS5(LEO) docx
EBB/LEO/LMP/CEG
LL-072426
March 26, 2021

EXHIBIT B
FIXTURE PLAN





Please initial

J:\lease\RALEIGH\LEO\Ritas Ice 1 #74393 - Market Square P#2598\Lease Drafts\LL\74393 LS5(LEO).docx
EBB/LEO/LMP/CEG
FL-072420
March 26, 2021

GUARANTY

LL 5/3/21  *May 6

In consideration of the execution and delivery of that certain Lease dated
*April 24_____, 2021 (hereinafter referred to as the "Lease") made by MSF
MARKET, LLC as Lessor, and ICE RAK LLC as Lessee, the undersigned REGINA TULLIO
(hereinafter referred to as "Guarantor") residing at 1471 Lake Berry Dr. W
(oheland, Fl 3380 hereby personally guarantees to the Lessor, its successors and
assigns, the payment of the rent and all other charges reserved in the Lease and
the performance by the Lessee of all the terms and provisions therein contained
and any subsequent modifications thereto made with or without Guarantor's
consent.

Provided due and proper notice or demand is given the Lessee, Guarantor hereby
expressly waives notice of all defaults and agrees that the waiver of any rights
by the Lessor against the Lessee, arising out of defaults by the Lessee, shall
not in any way modify or release the obligations of Guarantor.

This guaranty is and shall be construed as, an absolute, continuing and unlimited
guaranty of payment and performance commencing on the date hereof and throughout
the entire term of the Lease and any other time Lessee has possession of the
premises demised under the Lease, without regard to the regularity, validity or
enforceability of any liability or obligation of the Lessee; and the Lessor
shall not be required to proceed first against the Lessee or any other person
or entity or against any collateral security held by Lessor before resorting to
the undersigned for payment. Notwithstanding the foregoing, Lessor shall not be
permitted to recover any amounts owed in duplicate from both Lessee and
Guarantor.

This guaranty shall be enforceable against the heirs, administrators, executors,
successors, assigns and legal representatives of the Guarantor and the death of
the Guarantor shall not terminate the liability of the undersigned hereunder.

Dated: April 8 2021
April 29 2021

Regina Tullio

Social Security #: ____

STATE OF Florida )
                      ) ss:
COUNTY OF Polk )

On the 29th day of ____April____ in the year 2021, before me, the
undersigned, a notary public in and for said state, personally appeared
_Regina Tullio_ personally known to me or proved to me on the basis of
satisfactory evidence to be the individual whose name is subscribed to the within
instrument and acknowledged to me that he executed the same in his capacity, and
that by his signature on the instrument, the individual or the person upon behalf
of which the individual acted, executed the instrument.

DELAINA ARCHER
NOTARY PUBLIC
STATE OF FLORIDA
Comm# GG111495
Expires 6/5/2021

Notary Public

Please initial
LL

31

J:\lease\RALEIGH\LEO\Ritas Ice I #74393 - Market Square P#2598\Lease Drafts\LL\74393 LS6(LEO).docx
EBB/LEO/LMP/CEG
11-072120
April 1, 2021

GUARANTY

LL S|3|21    *May 6

*May 3

In consideration of the execution and delivery of that certain Lease dated
_____, 2021 (hereinafter referred to as the "Lease") made by MSF
MARKET, LLC as Lessor, and ICE RAK LLC as Lessee, the undersigned RAMIL KAMINSKY
(hereinafter referred to as "Guarantor") residing at 1471 Lake Berry Dr.
_____ hereby personally guarantees to the Lessor, its successors and
assigns, the payment of the rent and all other charges reserved in the Lease and
the performance by the Lessee of all the terms and provisions therein contained
and any subsequent modifications thereto made with or without Guarantor's
consent.

Provided due and proper notice or demand is given the Lessee, Guarantor hereby
expressly waives notice of all defaults and agrees that the waiver of any rights
by the Lessor against the Lessee, arising out of defaults by the Lessee, shall
not in any way modify or release the obligations of Guarantor.

This guaranty is and shall be construed as, an absolute, continuing and unlimited
guaranty of payment and performance commencing on the date hereof and throughout
the entire term of the Lease and any other time Lessee has possession of the
premises demised under the Lease, without regard to the regularity, validity or
enforceability of any liability or obligation of the Lessee; and the Lessor
shall not be required to proceed first against the Lessee or any other person
or entity or against any collateral security held by Lessor before resorting to
the undersigned for payment. Notwithstanding the foregoing, Lessor shall not be
permitted to recover any amounts owed in duplicate from both Lessee and
Guarantor.

This guaranty shall be enforceable against the heirs, administrators, executors,
successors, assigns and legal representatives of the Guarantor and the death of
the Guarantor shall not terminate the liability of the undersigned hereunder.

Dated: 4/8/21

RAMIL KAMINSKY

Social Security #: ___

STATE OF        )
                 ) ss:
COUNTY OF       )          See next page

    On the ____ day of _____ in the year 2021, before me, the
undersigned, a notary public in and for said state, personally appeared
_____ personally known to me or proved to me on the basis of
satisfactory evidence to be the individual whose name is subscribed to the within
instrument and acknowledged to me that he executed the same in his capacity, and
that by his signature on the instrument, the individual or the person upon behalf
of which the individual acted, executed the instrument.

_____
Notary Public

32

Please initial    LL

## State of Florida Acknowledgement Notary Certificate

**STATE OF FLORIDA**
**COUNTY OF Polk**

On 04/08/2021, before me, Linda L Clark, a notary public, personally appeared by physical presence, Ramil A Kaminsky who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the attached Guaranty [name of document] instrument and acknowledged to me that that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or entity upon behalf of which the person(s) acted executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State listed above that the foregoing paragraph is true and correct. WITNESS my hand and official seal.

Personally known          OR
Produced identification FL Type of identification produced: DL

_(Signature of notary public)_

**My commission expires:** 02/25/2024



LINDA L. CLARK
Notary Public, State of Florida
Commission# GG 951881
My comm. expires Feb. 25, 2024

**Official Seal**

https://raklawfirm-my.sharepoint.com/personal/ramil_raklawfirm_com/Documents/Personal/with modified rider.docx
EBB/LEO/LMP/CEG
LL:072420
April 29, 2021

LEASE RIDER

*May                                                                              6th

THIS RIDER (this "Rider") is made and entered into as of the ~~29th~~ day
of ~~April~~ ,2021 by and among RITA'S FRANCHISE COMPANY, LLC, a Delaware
limited liability company ("Franchisor"), ICE RAK LLC ("Franchisee") and MSF
MARKET, LLC ("Landlord"), as an addendum to the lease, as modified, amended,
supplemented, renewed and/or extended from time to time as contemplated
herein and dated _____ (the "Lease") for the Demised Premises as
more fully described in the Lease (the "Premises")

WHEREAS, Franchisee has also entered (or will enter prior to Lease
execution) into a Franchise Agreement (the "Franchise Agreement") with
Franchisor for the development and operation of a Rita's Italian Ice at the
Premises and as a condition to obtaining Franchisor's approval of the Lease,
the Lease for the Premises must contain the provisions contained in this
Rider.

NOW THEREFORE, in consideration of the mutual covenants and commitments
herein contained, the execution and delivery of the Lease, and other good
and valuable consideration, the receipt and sufficiency of which are hereby
acknowledged, the parties hereby agree as follows:

1.    The Premises may be used solely for the operation of a Rita's shop,
pursuant to the use clause detailed in the Lease. Franchisee, as the Lessee
under the Lease under the Lease, shall have the right, subject to Landlord
prior review and approval and any municipal or applicable code, to display
and use the "Rita's" proprietary marks and signs in the manner required by
Franchisor.

2.    Landlord agrees to deliver to Franchisor a copy of any notice of default
or termination of the Lease and all formal correspondence between Landlord
and Franchisee under the lease.

3.    Franchisee assigns to Franchisor, with Landlord's consent, all of
Franchisee's rights, title and interests to and under the Lease upon any
termination or expiration without renewal of the Franchise Agreement
(provided the Lease has a remaining term), but no such assignment shall be
effective unless and until: (a) the Franchise Agreement is terminated or
expires without renewal;(b) Franchisor exercises its option under the
Franchise Agreement and this Rider to assume Franchisee's interest under the
Lease by notifying Franchisee and Landlord in writing that Franchisor
assumes Franchisee's obligations under the Lease;(c) the Lease is in full
force and effect and there are no defaults thereunder; (d) Lessee under the
Lease shall agree in writing to remain liable under the terms of the Lease
for the remainder of the then existing term; (e) subsequent assignee shall
covenant, by written instrument, in form and content satisfactory to
Landlord, to pay the rent reserved and to perform all of Lessee* under the
~~Lease's obligations~~ under the Lease, including any accrued obligations as of
the time of the assignment; (f) such assignment shall be subject to all the
terms and conditions of this Lease including the requirement to use the
Demised Premises only for the Permitted Use set forth in the Lease; (g) the
assignee shall not be subject to any bankruptcy or insolvency proceedings at

5/3/21
RL  LL
*obligations

33

Please initial:  LL

https://raklawfirm-my.sharepoint.com/personal/ramil_raklawfirm_com/Documents/Personal/with modified rider.docx
EBB/LEO/LMP/CEG
11 4022430
April 29, 2021

the time of such assignment; and (h) Subsequent assignee shall deliver an original copy of the fully executed assignment, as well as documentation of satisfaction of the other terms and conditions set forth in this paragraph, prior to the assignment becoming effective..

4.    Franchisor shall have the right, but not the obligation, to cure any breach of the Lease upon giving written notice of its election to Franchisee and Landlord, and, if so stated in the notice, to also succeed to Franchisee's rights, title and interests thereunder, as detailed under the Lease and subject to the terms in Section 3 herein and not for any additional term. Such cure period shall be extended for an additional: (a) 5 days for in the event of a monetary default and (b) 10 days in the event of a non- monetary default (or such longer period as may be reasonably necessary provided Franchisor commences a cure within such 10-day period and diligently pursues the cure thereafter), after the expiration of the time in which Franchisee may cure a default pursuant to the terms of the Lease.

5.    Franchisee and Landlord acknowledge and agree that Franchisor shall have no liability or obligation whatsoever under the Lease unless and until Franchisor gives written notice to Landlord that Franchisor assumes the Lease in accordance with this Lease Rider. The parties also agree that by signing this Lease Rider, Franchisor has not guaranteed Franchisee's obligations to Landlord. Franchisor, along with its successors and assigns, is an intended third-party beneficiary of the provisions of this Rider.

6.    If Franchisor assumes the Lease, as provided above, Franchisor may, further assign the Lease to another franchisee of Franchisor to operate a Rita's shop (pursuant to the use clause detailed in the lease) at the Premises provided that the proposed franchisee has met all of Franchisor's applicable criteria and requirements, Landlord's reasonable financial requirements, has executed a franchise agreement with Franchisor and satisfies all of the requirements for Landlord in accordance with Section 3 of this Lease Rider as detailed above. Landlord and Franchisee agree to execute such further reasonable documentation in form and substance acceptable to Landlord to confirm Landlord's consent to the assignment permitted under this Rider as Franchisor may reasonably request for that purpose. Upon such assignment to a franchisee of Franchisor, Franchisor shall be released from any further liability under the terms and conditions of the Lease.

7.    Landlord and Franchisee further acknowledge that if the Franchise Agreement expires (without renewal) or is terminated, then Franchisee has an obligation under the Franchise Agreement to take certain steps to properly de-identify the Premises as a Rita's shop (unless Franchisor takes an assignment of the lease, as provided above). Landlord agrees to permit Franchisor, its employees or agent, to enter the Premises during the term of the Lease for up to ten (10) days or within the ten (10) days of lease termination to remove any signs (both interior and exterior), décor and/or any other materials displaying any marks, designs, slogans and/or logos associated with Franchisor provided Franchisor repairs any damage created by such removal and indemnifies Landlord for any loss, damage or injury to person or property as a result of Franchisor's entry. As between Franchisor and Landlord, Franchisor shall bear all costs and expenses of such /de-

Please initial

LL

https://rnklawfirm-my.sharepoint.com/personal/nmd_rnklaw firm_com/Documents/Personal/with modified rider.docx
EHB/LEO/LMP/CEG
1 1 0 1 1 5 6
April 29, 2021

identification activities in the event Franchisor undertakes such work and shall repair any damage to the Premises caused as a result of such entry and de-identification.

3.    Landlord and Franchisee agree that copies of any and all notices required or permitted under this Rider, or under the Lease, shall also be sent to Franchisor at 1210 Northbrook Drive, Suite 310, Trevose, PA 19053 (attention Legal Department), or to such other address as Franchisor may specify by giving written notice to Landlord.

WITNESS the execution hereof.

LANDLORD

By:
Name: Shawn Jackson
Title: Counsel and authorized agent

FRANCHISEE

By: Leonie Tullu
Name:
Title: Manager of JCC RAK LLC

RITA'S FRANCHISE COMPANY, LLC ("Franchisor")

By:
Name: Gerald C. Wells
Title: General Counsel & CCO

Please initial

LL

35

J:\lease\RALEIGH\LEO\Ritas Ice I #74393 - Market Square P#2598\Lease Drafts\LL\74393 LS6(LEO).docx
EBB/LEO/LMP/CEG
11-07702
April 1, 2021

<u>Prepared by and return to:</u>
Sheila Hoch
Benderson Properties, Inc.
570 Delaware Avenue
Buffalo, NY 14202

## MEMORANDUM OF LEASE

NAME AND ADDRESS OF LESSOR:       MSF Market, LLC
                                  7978 Cooper Creek Boulevard
                                  Suite # 100
                                  University Park, Florida 34201

NAME AND ADDRESS OF LESSEE:       Ice RAK, LLC
                                  1471 Lake Benny Dr. W
                                  Lakeland, FL 33801

DESCRIPTION OF DEMISED PREMISES:  approximately 1,500 square feet of
                                  space (the "Demised Premises") located
                                  at Market Square US-98 N, Lakeland,
                                  Florida.  See Exhibit "A" attached
                                  hereto.

DATE OF LEASE:                    May 6            , 2021

TERM OF LEASE:                    Five (5) years

TERM OF OPTION:                   Two (2) - Five (5) year

Nothing contained in this Memorandum of Lease shall be deemed to modify the
provisions of the Lease or the rights and obligations of the parties
thereto.  In the event of any ambiguity between the terms of this
Memorandum of Lease and the terms of the Lease, the terms of the Lease
shall prevail.

Pursuant to Section 713.10, Florida statutes, notice is hereby given that
neither Lessee nor anyone claiming by, through or under Lessee has any right
to subject Lessor's interest in the Shopping Center to any claim or lien and
all such parties must look solely to the credit of Lessee for payment.  The
specific language contained in the Lease is as follows:

  "Section 13.  Mechanics Lien:  Lessee has no authority or power to
  cause or permit any lien or encumbrance of any kind whatsoever, whether
  created by act of Lessee, operation of law, or otherwise, to attach to

36                          Please initial

                                            LL

J:\lease\RALEIGH\LEO\Ritas Ice I #74393 - Market Square P#2598\Lease Drafts\LL\74393 LS6(LEO).docx
EBB/LEO/LMP/CFG
FL-072420
April 1, 2021

or be placed upon Lessor's title or interest in the Shopping Center or Demised Premises, and any and all liens and encumbrances created by Lessee shall attach to Lessee's interest only. In order to comply with the provisions of Section 713.10, Florida Statutes, it is specifically provided that neither Lessee nor anyone claiming by, through or under Lessee, including, but not limited to, contractors, subcontractors, materialmen, mechanics and laborers, shall have any right to file or place any mechanics' or materialmen's liens of any kind whatsoever upon the Demised Premises, the Shopping Center or improvements thereon, and any such liens are hereby specifically prohibited. All parties with whom Lessee may deal are put on notice that Lessee has no power to subject Lessor's interest to any mechanics' or materialmen's lien of any kind or character, and all such persons so dealing with Lessee must look solely to the credit of Lessee, and not to Lessor's interest or assets. In the event that any such lien is filed against the premises as a result of alterations, additions or improvements made by or on behalf of Lessee, Lessor, at its option, after ten (10) days' notice to Lessee may pay the said lien and Lessee shall forthwith reimburse Lessor the total expense incurred by Lessor (including but not limited to reasonable attorney fees) in procuring the discharge or bonding the said lien, as additional rent hereunder."

*(handwritten margin notes: LL 5/5/21, thirty (30))*


REMAINDER OF PAGE INTENTIONALLY BLANK.
SIGNATURE PAGE TO FOLLOW.


37

Please initial _LL_

J:\lease\RALEIGH\LEO\Ritas Ice L#74393 - Market Square P#2598\Lease Drafts\1 L\74393 LS6(LEO) docx
EBB/LEO/LMP/CFG
FL-072420
April 1, 2021

IN WITNESS WHEREOF, the parties hereto have set their hands and seals below.

**LESSOR:**

MSF MARKET, LLC

Date: _____       By: _____
                                       Shaun Jackson, Counsel and
                                       Authorized Agent

**LESSEE:**

Date: ~~April 8 2021~~
      April 29 2021
      D

ICE RAK, LLC

By: _____

Print Name: Regina Tullio

Print Title: MGR

Please initial **LL**

38

J:\lease\RALEIGH\LEO\Ritas Ice L#74393 - Market Square P#2598\Lease Drafts\LL\74393 LS6(LEO) docx
LBB/LEO/LMP/CEG

April 1, 2021

### LESSOR'S ACKNOWLEDGMENT

State of _____ )
                          )  ss:
County of _____ )

On the _____ day of _____ in the year 2021, before me, the
undersigned, a notary public in and for said state, personally appeared
_____, personally known to me or proved to me on the basis of
satisfactory evidence to be the individual whose name is subscribed to the
within instrument and acknowledged to me that he executed the same in his
capacity and that by his signature on the instrument, the individual(s) or
the person(s) upon behalf of which the individual acted, executed the
instrument.

_____
NOTARY PUBLIC

### LESSEE'S ACKNOWLEDGMENT

State of _Florida_ )
                   )  ss:
County of _Polk_   )

On the _29th_ day of _April_ in the year 2021, before me, the
undersigned, a notary public in and for said state, personally appeared
_Regina Tullio_, personally known to me or proved to me on the basis of
satisfactory evidence to be the individual whose name is subscribed to the
within instrument and acknowledged to me that he/she/they executed the same
in his/her/their capacity and that by his/her/their signature on the
instrument, the individual(s) or the person(s) upon behalf of which the
individual(s) acted, executed the instrument.

DELAINA ARCHER
NOTARY PUBLIC
STATE OF FLORIDA
Comm# GG111495
Expires 6/5/2021

_____
NOTARY PUBLIC

39

Please initial 
__LL__

## State of Florida Acknowledgement Notary Certificate

**STATE OF FLORIDA**
**COUNTY OF Polk**

On 04/08/2021, before me, Linda L Clark, a notary public, personally appeared by physical presence, Regina M Tullio who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the attached Lease agreement [name of document] instrument and acknowledged to me that that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or entity upon behalf of which the person(s) acted executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State listed above that the foregoing paragraph is true and correct. WITNESS my hand and official seal.

Personally known          OR
Produced identification FL Type of identification produced: DL



*(Signature of notary public)*

**My commission expires:** <u>02/25/2024</u>

LINDA L. CLARK
Notary Public State of Florida
Commission# GG 951881
My comm. expires Feb 25, 2024

**Official Seal**

05-74-0433NSB  02-2020