# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**CASE NO. 8:23-cv-02659-WFJ-TGW**

ICE RAK, LLC, *a Florida Limited Liability Company*,

Plaintiff,

v.

RITA'S FRANCHISE COMPANY, LLC, *a Delaware Limited Liability Company*,

Defendant.

_____/

## PLAINTIFF, ICE RAK, LLC'S CLOSING MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO STAY PROCEEDINGS PENDING ARBITRATION

Plaintiff, ICE RAK, LLC ("ICE RAK" or "Plaintiff"), by and through the undersigned counsel, hereby files this Closing Memorandum of Law in Opposition to Defendant, RITA'S FRANCHISE COMPANY, LLC ("RITA'S" or "Defendant")'s Motion to Stay Proceedings Pending Arbitration [D.E. 08] and Plaintiff's Notice of Transcript Designation filed contemptuously and incorporated herein by reference and states as follows:

### I.  INTRODUCTION

On or about July 31, 2020, non-parties to this action, REGINA "GINA" M. TULLIO ("Tullio") and RAMIL A. KAMINSKY ("Kaminsky") (hereinafter collectively known as "Non-Parties"), as Franchisee, executed the RITA'S Franchise Company, LLC Franchise Agreement (the "FA").

On or about August 4, 2020, Kaminsky filed the Articles of Organization for ICE RAK, LLC ("ICE RAK"), with the Florida Department of State, Division of Corporations.

On or about May 6, 2021, ICE RAK executed a lease agreement between MSF Market, LLC ("Lessor" or "Landlord") and ICE RAK, as Lessee (the "May 6, 2021, Lease Agreement"), in regard to the property located at Market Square, US-98N, Lakeland, Florida (the "Property" or "Lakeland Shop"). RITA'S also executed a Lease Rider recognizing ICE RAK **_only_** as the Franchisee and which states that ICE RAK "entered (or will enter prior to the Lease Execution) into a Franchise Agreement" which was done orally and through the conduct of the parties.

On or about December 2021, ICE RAK opened a RITA'S Ice Custard Happiness® shop on the Lakeland Shop.

As testified by RITA'S General Counsel, Gerald C. Wells, Esq., RITA'S Franchise Agreement is publicly available ("Franchise Agreement") and contains provisions from which they do not deviate.

Both the FA, and the publicly available Franchise Agreement, outlined the rights and responsibilities of prospective franchisees of RITA'S, specifically:

a. Article 5, Construction and Opening of Shop:

   1. "Franchisee must comply with all site/lease approval and construction deadlines in this Section; provided, however, Franchisee must open the Shop no later than 270 days after the Effective Date."

      i. The Effective Date of the Non-Parties' FA was July 31, 2020.
      ii. Plaintiff opened their store under an oral franchise agreement approximately 488 days after Non-Parties' Effective Date; December 2021.

   2. Article 5.2 states that **_"[i]f Franchisee fails to execute the Accepted Location Addendum within 15 days of Franchisee's receipt_** of the Accepted Location Addendum from [RITA'S], **_[RITA'S] authorization in the Site Acceptance Notice shall be deemed revoked._**" (Emphasis added).
      i. Neither the Non-Parties nor Plaintiff executed an Accepted Location Addendum for any location.

    b. Article 14, Transfer of Interest:

        1. Section 14.2 states, "Franchisee understands and acknowledges that Company has granted this franchise in reliance on Franchisee's (or, if Franchisee is an entity, its Owners') business skill, financial capacity, and personal character. ***Accordingly, neither Franchisee***, nor any individual (including the Owners), partnership, corporation, limited liability company, or other legal entity which directly or indirectly owns any interest in Franchisee or in the Shop ***shall sell, assign, transfer, convey, pledge, encumber, merge, or give (collectively, "transfer") away any direct or indirect interest in Franchisee*** (including any direct or indirect interest in a Franchisee that is an entity) ***in the Shop, or in all or substantially all of the assets of the Shop or the business franchised hereunder, without Company's prior written consent***." (Emphasis added.)

            i. Non-Parties never assigned the FA to Plaintiff and Plaintiff never accepted an assignment of the FA, neither orally nor in writing.

        2. Section 14.3.4 states, "***Any proposed assignment agreement executed by the transferor and transferee shall be in a form designated by Company***, which includes a requirement that ***the transferee of any beneficial interest in Franchisee shall enter into a written agreement, in a form designated by Company, agreeing to be bound as an Owner under the terms of this Agreement*** as long as such person or entity owns any interest in Franchisee". (Emphasis added.)

    c. Article 26, Applicable Law:

        1. Section 26.6 of the Franchise Agreement states: "Except for claims arising from (i) Franchisee's non-payment of amounts owed to Company and/or its affiliates, (ii) post-termination obligations under this Agreement, or (iii) any violations of intellectual property rights, any and all claims and actions arising out of or relating to this Agreement, ***the relationship of Franchisee*** and Company, Franchisee's or Company's actions in connection with this Agreement or Franchisee's operation of a Shop will be barred unless a judicial or arbitration proceeding is commenced by either party hereto against the other (including actions Franchisee may bring against Company, its affiliates,

officers, directors, and employees) ***within 24 months from the occurrence of the facts giving rise to such claim or action***." (Emphasis added).

      i. Plaintiff, ICE RAK, and Defendant, RITA'S, executed the Lease Rider at issue in this case on May 6, 2021, putting RITA'S on notice that ICE RAK was the Franchisee (not the Non-Parties to the FA) which is the date of "the occurrence of the facts giving rise" to a claim related to "the relationship of Franchisee and Company. May 6, 2023, is 24 months from the occurrence of those facts and, to date (approx. 33 months later) RITA'S has not brought a claim seeking to hold ICE RAK responsible under the FA.

On or about November 20, 2023, Plaintiff filed the Complaint for Declaratory Judgment [D.E. 01] which seeks for this Court to determine the validity of the Lease and Lease Rider *only*, and whether Defendant RITA'S has any rights, duties, and legal relations to Plaintiff, ICE RAK, LLC, and the Lease Agreement and Lease Rider *only*.

On or about December 18, 2023, Defendant RITA'S filed its Motion To Stay Proceedings Pending Arbitration ("Defendant's Motion to Stay") [D.E. 08] requesting this Court to stay the instant case and subject Plaintiff ICE RAK to arbitration based on two legal arguments:

a. The Doctrine of Equitable Estoppel Prevents Ice Rak from Avoiding Arbitration; and

b. The Arbitrator Should Determine the Scope of Arbitration Provision.

This matter was set for an evidentiary hearing on February 2, 2024, there were 4 main points that were critical to a ruling of the Motion which are:

1.     Whether the Court is to rely on Florida law.

2.     Pre-Incorporation Contracts only bind the business entity when the incorporator contracts in the name of entity to be formed.

3.     RITA'S conduct deviated from the terms of the publicly available Franchise Agreement and the Non-Parties' FA..

4.   Any claims and actions relating to the relationship of the parties by RITA'S against ICE RAK and/or the Non-Parties is time barred per the publicly available Franchise Agreement and the Non-Parties' FA.

## II.   ARGUMENT

Although there is a strong federal policy favoring the resolution of disputed arbitrable issues through arbitration, courts "are not to twist the language of the contract to achieve a result which is favored by federal policy but contrary to the intent of the parties." *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1214 (11th Cir. 2011) (citation and internal quotations omitted). And "parties will not be required to arbitrate when they have not agreed to do so." *Id*.

The Court considers the following factors when deciding whether to compel arbitration: "1) whether a valid written agreement to arbitrate exists; 2) whether an arbitrable issue exists; and 3) whether the right to arbitrate has been waived." *Williams v. Eddie Acardi Motor Co.*, No. 3:07-cv-782-J-32JRK, 2008 WL 686222, at *4 (M.D. Fla. Mar. 10, 2008) (citations omitted).

### a.   Florida law must be applied.

When deciding whether the parties have agreed to arbitrate certain matters, courts generally apply state law principles governing the formation of contracts. *Am. Express Fin. Advisors, Inc. v. Makarewicz*, 122 F.3d 936, 940 (11th Cir. 1997) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); see *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003) (stating that courts may decide "certain gateway matters, such as whether parties have a valid arbitration agreement at all or whether a[n] ... arbitration clause applies to a certain type of controversy").

All the parties and papers filed by them in this action, including Defendant's own Motion to Stay and Reply in Support of its Motion to Stay all rely on Florida law. Although the FA signed by the Non-Parties and the RITA'S FA states that the laws of the Commonwealth of Pennsylvania

apply, the question before the Court is whether ICE RAK, a Florida LLC and a non-party to the FA, can be forced into arbitration pursuant to the FA which is an analysis that must rely on Florida law to determine the right of ICE RAK, a Florida LLC.

   b. **Pre-Incorporation Contracts only bind the business entity when the <u>incorporator contracts in the name of entity to be formed.</u>**

RITA'S claims that Section 26.9 binds ICE RAK to the terms and conditions of the FA. Section 26.9 of the publicly available Franchise Agreement and FA states:

> "26.9 The term "Franchisee" for purposes of this arbitration clause, shall include the shareholders, owners, Guarantor(s) (defined below), principals, members, or partners of Franchisee, ***or any person or entity claiming by or through any of the foregoing***. Franchisee specifically agrees and acknowledges that claims arising out of or relating to this Agreement in any way against or by any person or entity, ***whether a signatory to this Agreement or not***, shall be resolved through arbitration. Franchisee specifically agrees that this Section 26 is entered into without any fraud, duress, or undue influence on the part of Company or any agent, broker, or employee thereof." (Emphasis added).

First, this matter brought by Plaintiff, ICE RAK, is not pursuant to any terms of any Franchise Agreement or the FA. It is **solely** related to the Lease and Lease Rider.

Secondly, the FA makes no reference to an entity that has been or will be formed and in no way does it reference ICE RAK. As stated in *Blue Paper, Inc. v. Provost*, 914 So. 2d 1048, 1051 (Fla. 4th DCA 2005):

> "The general rule is that "the promoter of a corporation is personally liable on the contracts entered into on behalf of the corporation he is organizing." [*See Vodopich v. Collier County Developers, Inc.*, 319 So.2d 43, 44 (Fla. 2d DCA 1975)]. The exception to the general rule applies "'where a promoter contracts in the name of a corporation which is to be formed later and does not intend to be liable on it, and the other party knows that the corporation has not been formed and that the promoter does not intend to be liable.'" *Id*."

As defined by Black's Law Dictionary:

> "Promoter (14c) 1. Someone who encourages or incites. 2. Corporations. A founder or organizer of a corporation or business venture; one who takes the entrepreneurial initiative in founding or organizing a business or enterprise." PROMOTER, Black's Law Dictionary (11th ed. 2019).

In the instant case, Tullio and Kaminsky did not execute the FA "*in the name of a corporation which was to be formed later*" but instead executed the FA solely in their individual capacity.

ICE RAK did not exist at the time of Non-Parties executed the FA and ICE RAK is not seeking to enforce or contest any provision of the FA as their sole purpose for bringing this action relates exclusively as to the Lease and Lease Rider executed by ICE RAK and RITA'S.

RITA'S never executed a transfer of interest, as required by both the publicly available Franchise Agreement and the FA under Article 14.

ICE RAK did not ratify, nor agree to be bound by, any written franchise agreement nor did they specifically agree to be bound by the FA.

There was no novation of the FA by the parties and Non-Parties. As the Fourth District Court of Appeals in *S.N.W. Corp. v. Hauser*, 461 So.2d 188, 189 (Fla. 4th DCA, 1984) found:

> A novation takes place only by agreement, but where the terms of a written agreement are not in doubt, the question of whether it effects a novation is one of law for the court. *Morecraft v. Allen,* 78 N.J.L. 729, 75 A. 920, L.R.A.1915B, 1. Existence of a <u>novation must be implied as a matter of law</u> in those instances <u>where the parties enter into an **entirely new and unambiguous agreement of equal or greater dignity to the agreement first**</u> made with respect to the same subject.
> 
> *Evans v. Borkowski,* 139 So.2d 472, 474 (Fla. 1st DCA 1962), *cert. denied,* 146 So.2d 378 (Fla.1962). Appellants argue that they satisfied the four requisite elements for a novation: (1) the existence of a previously valid contract; (2) the agreement to make a new contract; (3) the intent to extinguish the original contractual obligation; and (4) the validity of the new contract. *Sans Souci v. Division of Florida Land Sales & Condominiums,* 421 So.2d 623, 630 (Fla. 1st DCA 1982), *rev'd on other grounds,* 448 So.2d 1116 (Fla. 1st DCA 1984); 11 Fla.Jur.2d *Contracts* § 183. (emphasis added).

Per Section 24.1 of both the publicly available Franchise Agreement and the FA, a novation was not possible without a writing executed by all the parties[1] and no novation occurred in which ICE RAK was a party.

Therefore, RITA'S claims that Article 26.9 of the Franchise Agreement allegedly binds ICE RAK to the written Franchise Agreement is not accurate.

The written Franchise Agreement is a pre-incorporation contract, executed prior to ICE RAK's formation, that only binds the Non-Parties, Tullio and Kaminsky, who executed said written Franchise Agreement, not in a representative capacity, but as individuals.

c. **RITA'S conduct deviated from the terms of the publicly available Franchise Agreement and the Non-Parties' FA.**

"The Court conducts a two-part inquiry to determine whether a party has waived its arbitration rights." *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1236 (11th Cir. 2018). The first part focuses on "the totality of the circumstances" and asks whether the nonmoving party has "substantially invoked the litigation machinery prior to demanding arbitration." *Id.* (citations and internal quotations omitted). The second part focuses on the prejudice to the nonmoving party and considers, among other things, the expense incurred by the moving party's participation in the litigation process. *Id.* (citations and internal quotations omitted). "[T]he key ingredient in the waiver analysis is fair notice to the opposing party and the District Court of a party's arbitration rights and its intent to exercise them." *Id.*

On or about July 31, 2020, Non-Parties, Tullio and Kaminsky as Franchisees, and RITA'S as Franchisor, executed the FA to open a RITA'S Italian Ice Shop in Florida (the "Shop").

---

[1] Section 24.1 states in part, "Except for those permitted to be made unilaterally by Company hereunder, no amendment, change, or variance from this Agreement shall be binding on either party unless mutually agreed to by the parties and executed by their authorized officers or agents in writing."

ICE RAK did not exist at the time Non-Parties executed the FA with RITA'S.

ICE RAK and RITA'S conduct throughout their Franchisee/Franchisor relationship operated under similar, but distinct, terms from RITA'S relationship with Tullio and Kaminsky under the written FA.

One of such stark differences was RITA'S lax behavior toward various terms under the publicly available Franchise Agreement and the FA, which, this Court should note, were originally authored by RITA'S.

### *1. Article 14 of the Franchise Agreement*

RITA'S never complied with Article 14 of the Franchise Agreement under which RITA'S was required to execute a Transfer of Interest in order for ICE RAK to be bound as an owner/franchisee under the terms of the Franchise Agreement.

On or about May 6, 2021, RITA'S became aware of the existence of ICE RAK evidenced by the Lease Rider executed by RITA'S General Counsel, Gerald Wells, Esq., and Tullio on behalf of ICE RAK **only**. A true and correct copy of the May 6, 2021, Lease Rider is attached as **Exhibit "A"**.

On or about May 27, 2021, Jamie Snyder, a Franchise Consultant on behalf of RITA'S, notified Tullio that, as per RITA'S legal department, they required Tullio to provide documents to prepare the paperwork to execute the transfer of interest. A true and correct copy of the May 27, 2021, Email from RITA'S Requesting ICE RAK documentation is attached as **Exhibit "B"**.

Despite knowledge of ICE RAK's creation since May 2021, the required Transfer of Interest from Article 14 was never executed. However, RITA'S continued to conduct business directly with ICE RAK under a Franchisor/Franchisee relationship.

### *2. Article 5 of the Franchise Agreement*

RITA'S never complied with Article 5 of the FA under which Franchisees must open the Shop no later than 270 days after the Effective Date.

Article 5 of the Franchise Agreement states:

> "… Franchisee **must comply with all site/lease approval and construction deadlines in this Section**; provided, however, Franchisee **must open the Shop no later than 270 days after the Effective Date**." (Emphasis added.)

The Effective Date of the Non-Parties' FA was July 31, 2020. Plaintiff opened their store under an oral franchise agreement approximately 488 days after Non-Parties' Effective Date; December 2021.

The Shop located in Lakeland, Florida opened on or about December 2021.

In clear violation of the Franchise Agreement, a total of on or about 488 days transpired between the Effective Date and the opening of the Shop which evidences that ICE RAK was not nor agreed to be held to the terms of the FA as their store opened 218 days beyond the 270-day period prescribed in the publicly available Franchise Agreement and FA.

### 3. Article 5.2 of the Franchise Agreement

RITA'S never complied with Article 5.2 of the Franchise Agreement under which it states that "***[i]f Franchisee fails to execute the Accepted Location Addendum within 15 days of Franchisee's receipt*** of the Accepted Location Addendum from [RITA'S], ***[RITA'S] authorization in the Site Acceptance Notice shall be deemed revoked***." (Emphasis added).

RITA'S did not produce into evidence an Accepted Location Addendum for the Property executed by Tullio and Kaminsky or Ice Rak, as one does not exist.

As per RITA'S December 18, 2023, *Motion to Stay Proceedings Pending Arbitration*, RITA'S claims that the Doctrine of Equitable Estoppel prevents ICE RAK from avoiding arbitration.

As per *Bueno v. Workman*, 20 So. 3d 993, 997 (Fla. 4th DCA 2009):

> "Equitable estoppel is based on principles of fair play and essential justice and arises when one party lulls another party into a disadvantageous legal position[.]" *Fla. Dep't of Health & Rehab. Servs. v. S.A.P.,* 835 So.2d 1091, 1096 (Fla.2002) (citation omitted).

> "The elements of equitable estoppel are '(1) a representation as to a material fact that is contrary to a later-asserted position, (2) reliance on that representation, and (3) a change in position detrimental to the party claiming estoppel, caused by the representation and reliance thereon.'" *Curci Village Condo. Ass'n v. Maria,* 14 So.3d 1175, 1177 (Fla. 4th DCA 2009) (quoting *State v. Harris,* 881 So.2d 1079, 1084 (Fla.2004))."

As per *Arencibia v. AGA Serv. Co.*, 533 F. Supp. 3d 1180, 1189 (S.D. Fla. 2021):

> "The general rule in Florida is that **a plaintiff cannot pursue an *equitable remedy***, such as a claim for unjust enrichment, **"where an express *contract* exists concerning the same subject matter."** *Kovtan v. Frederiksen*, 449 So. 2d 1, 1 (Fla. 2d DCA 1984) (per curiam)." (Emphasis added.)

As per *Marcus v. Fla. Bagels, LLC*, 112 So. 3d 631, 634 (Fla. 4th DCA 2013):

> "The doctrine of equitable estoppel '***precludes a party from asserting rights he otherwise would have had against another when his own conduct renders assertion of those rights contrary to equity***.'" *R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n,* 384 F.3d 157, 160 (4th Cir.2004) (quoting *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH,* 206 F.3d 411, 417–18 (4th Cir.2000))." (Emphasis added.)

RITA'S is requesting this Court to (i) contrary to the general rule in Florida, use an equitable remedy to enforce an alleged contract; and (ii) to enforce a contract RITA'S has itself voluntarily breached by failing to execute, among other things, the Transfer of Interest under Article 14 of the Franchise Agreement.

As per *Marcus v. Fla. Bagels, LLC*, 112 So. 3d 631, 634 (Fla. 4th DCA 2013):

> "The rationale behind allowing a non-party to an arbitration agreement to use equitable estoppel to compel a party to arbitrate is that otherwise "'the arbitration proceedings [between the two signatories] would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.'" *MS Dealer Serv. Corp. v. Franklin,* 177 F.3d 942, 947 (11th Cir.1999) (alteration in original) (quoting *Sam Reisfeld & Son Import Co. v. S.A. Eteco,* 530 F.2d 679, 681 (5th Cir.1976)). Consequently, in applying this doctrine,

> courts have also focused upon the "fairness" of the party's conduct. *See Hill v. GE Power Sys., Inc.*, 282 F.3d 343, 349 (5th Cir.2002) ("'[T]he lynchpin for equitable estoppel is equity' and the point of applying it to compel arbitration is to prevent a situation that 'would fly in the face of fairness.'" (quoting *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 528 (5th Cir.2000)))."

RITA'S insistence of bringing ICE RAK into the arbitration would serve no purpose because RITA'S only claim is for liquidated damages against the Non-Parties under the FA, not the Lease or the Lease Rider. RITA'S is not seeking an assignment of the May 6, 2021, Lease Agreement nor anything related to the Property as they know those claims are time barred as further explained below.

Here, Defendant has evinced no intent to litigate prior to asserting its arbitration rights. Due to *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022), where the Supreme Court held that courts may not "condition a waiver of the right to arbitration on a showing of prejudice[,]" there is some doubt concerning the import of prejudice in Eleventh Circuit's waiver inquiry. Having written the terms of the Arbitration Agreement, RITA'S cannot credibly claim it was unfamiliar with its requirements. Even if Defendant had the right to compel Plaintiff into arbitration, Defendant's more than two-year delay in asserting said right grossly prejudices Plaintiff. While these facts are perhaps no longer dispositive following *Morgan*, they only serve to support Plaintiff's position that Defendant has waived arbitration.

Such a lackadaisical regard for pursuing arbitration on its part—which RITA'S voluntarily and intentionally engaged in—is inconsistent with the greater speed and efficiency that arbitration provides and is inconsistent with its arbitration right. Thus, the totality of the circumstances suggests the kind of outcome-oriented practice that waiver is designed to prevent. See *Gutierrez*, 889 F.3d at 1236. It is too late for RITA'S to change course and demand arbitration now.

    d. **Any claims and actions relating to the relationship of the parties by RITA'S against ICE RAK and/or the Non-Parties is time barred per the publicly <u>available Franchise Agreement and the Non-Parties' FA.</u>**

The terms of the Arbitration Agreement itself require the action to stay in this forum.

### *<u>1. Article 26.6 of the Franchise Agreement</u>*

Section 26.6 of the publicly available Franchise Agreement and the FA states:

> "26.6 Except for claims arising from (i) Franchisee's non-payment of amounts owed to Company and/or its affiliates, (ii) post-termination obligations under this Agreement, or (iii) any violations of intellectual property rights, any and all claims and actions arising out of or relating to this Agreement, *the relationship of Franchisee* and Company, Franchisee's or Company's actions in connection with this Agreement or Franchisee's operation of a Shop will be barred unless a judicial or arbitration proceeding is commenced by either party hereto against the other (including actions Franchisee may bring against Company, its affiliates, officers, directors, and employees) <u>**within 24 months from the occurrence of the facts giving rise to such claim or action**</u>." (Emphasis added).

Therefore, as Section 26.6 stands, there are only three (3) circumstances under which the 24-month statute of limitations does not apply:

    (i) Franchisee's non-payment of amounts owed to Company and/or its affiliates,

    (ii) post-termination obligations under this Agreement, or

    (iii) any violations of intellectual property rights.

Section 26.6 continues to state that, aside from these three (3) exceptions, "<u>***any and all claims and actions***</u> arising out of or relating to this Agreement, <u>***the relationship of Franchisee and Company***</u>, Franchisee's or Company's actions in connection with this Agreement or Franchisee's operation of a Shop" (emphasis added), "<u>***will be barred***</u> unless a judicial or arbitration proceeding is commenced … <u>***within 24 months from the occurrence of the facts giving rise to such claim or action***</u>." (Emphasis added).

Thus, RITA'S had 24 months (*i.e.*, two years), to commence either a judicial or arbitration proceeding starting "<u>***from the occurrence of the facts giving rise to such claim or action***</u>" (*i.e.*,

since RITA'S became aware of the existence of ICE RAK and its unsuccessful attempts to execute a transfer of interest).

### *2. When Does a Statute of Limitations Start?*

As stated in *MSPA Claims 1, LLC v. Tower Hill Prime Ins. Co.*, 43 F.4th 1259, 1265 (11th Cir. 2022):

> "When determining the start date for a statute of limitations, courts typically choose between one of two rules. The first—which we'll call the "occurrence rule"—begins the limitations period on the *date that the violation of the plaintiff's legal right occurred. See SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328, 137 S. Ct. 954, 962, 197 L.Ed.2d 292 (2017). The second—the **"discovery rule"**—**commences the limitations period on the date the plaintiff discovered or should have discovered the cause of action**. *See id*." (Emphasis added).

The Eleventh Circuit reinforces the terms of Section 26.6 of the Franchise Agreement and FA, under which RITA'S has chosen the "*discovery rule*", in that the statute of limitations for RITA'S to bring forth either a judicial or arbitration proceeding starts since "*from the occurrence of the facts giving rise to such claim or action*."

As such, RITA'S claims as to the relationship between them, the Non-Parties and, specifically, ICE RAK are time barred.

As per RITA'S December 18, 2023, *Motion to Stay Proceedings Pending Arbitration*, RITA'S claims that the Doctrine of Equitable Estoppel prevents ICE RAK from avoiding arbitration.

> "The elements of equitable estoppel are '(1) a representation as to a material fact that is contrary to a later-asserted position, (2) reliance on that representation, and (3) a change in position detrimental to the party claiming estoppel, caused by the representation and reliance thereon.'" *Curci Village Condo. Ass'n v. Maria,* 14 So.3d 1175, 1177 (Fla. 4th DCA 2009) (quoting *State v. Harris,* 881 So.2d 1079, 1084 (Fla.2004))."

RITA'S claims that (1) ICE RAK made a material representation by presenting itself as a "franchisee", (2) that RITA'S relied on that representation, and (3) alleges that now RITA'S has been damaged by ICE RAK's rejection of the FA's arbitration clause.

However, RITA'S assertions as to equitable estoppel are misguided.

*(1) ICE RAK has never made a material representation that is contrary to a later-asserted position.*

ICE RAK was created to operate a RITA'S Ice Custard Happiness® shop on the Lakeland Shop. It presented itself as a franchisee, entered into a Lease Rider with RITA'S where ICE RAK was referred to as a franchisee, and RITA'S never communicated anything to the contrary.

*(2) RITA'S relied on ICE RAK's representation.*

RITA'S was aware that ICE RAK was created for the purpose of operating the RITA'S Ice Custard Happiness® shop, but never executed the necessary steps for Transfer of Interest as required by Article 14 of the FA.

*(3) RITA'S alleges ICE RAK has performed a change in position that is detrimental to RITA'S.*

RITA'S claims ICE RAK's repudiation of the arbitration clause, as a non-signatory of the July 31, 2020 FA, is contrary to ICE RAK's representations as a franchisee.

As defined in Fla. Stat. § 817.416(b):

b)   The term "franchise or distributorship" means a contract or agreement, *either expressed or implied, whether oral or written,* between two or more persons:
   1.   Wherein a commercial relationship of definite duration *or continuing indefinite duration is involved*;
   2.   Wherein one party, hereinafter called the "franchisee," is granted the right to offer, sell, and distribute goods or services manufactured, processed, distributed or, in the case of services, organized and directed by another party;
   3.   Wherein the franchisee as an independent business constitutes a component of franchisor's distribution system; and
   4.   Wherein the operation of the franchisee's business franchise is substantially reliant on franchisors for the basic supply of goods. (emphasis added)

ICE RAK has never made a material representation that is contrary to a later-asserted position. Consistent with the terms of the Lease Rider, ICE RAK maintains it is a franchisee under an *oral franchise agreement* due to RITA'S lack of compliance with its own provisions of both the publicly available Franchise Agreement and the FA prepared and dispersed by RITA'S.

In this matter, the record was replete of testimony that all actions taken by the Plaintiff were done so under an oral franchise agreement coupled with the terms of the Lease given them authority to run a RITA'S franchise, including the use of their trademarks, and that Defendant was paid royalties by the Plaintiff (and not the Non-Parties). In the event the Court's ruling depends on whether or not there was an oral franchise agreement between Plaintiff and Defendant, that determination cannot be made until discovery has been had in the matter and thus would be premature at this time and the Motion to Stay must be denied[2].

"Under Florida law, a breach-of-contract claim has three elements: "(1) a valid contract; (2) a material breach; and (3) damages." *Friedman v. N.Y. Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008).

A contractual obligation between two parties "need not be pursuant to an express provision in a written contract, but may either be an express or implied contractual obligation." *Rabon v. Inn of Lake City, Inc.*, 693 So. 2d 1126, 1129 (Fla. 1st DCA 1997) (cleaned up). "A contract implied in fact is one form of an enforceable contract; it is based on a tacit promise, one that is inferred in whole or in part from ***the parties' conduct***, not solely from their words." *Commerce P'Ship 8098*

---

[2] "In any event—and especially given these added details about the Defendant's assent—we agree with Magistrate Judge Hunt's observation that ***"whether an implied-in-fact contract has been formed can be a fact-intensive inquiry better resolved after discovery."*** R & R at 7 (citing *Rosner v. United States*, 231 F. Supp. 2d 1202, 1217 (S.D. Fla. 2002) (Seitz, J.))." *Vanguard Plastic Surgery, PLLC v. UnitedHealthcare Ins. Co.*, 658 F. Supp. 3d 1250, 1262 (S.D. Fla. 2023) (emphasis added).

*Ltd. P'Ship v. Equity Contracting Co., Inc.*, 695 So. 2d 383, 385 (Fla. 4th DCA 1997) (en banc); *see also Rabon*, 693 So. 2d at 1131 ("In ***a contract implied in fact the assent of the parties is derived from other circumstances, including their course of dealing or usage of trade or course of performance.***" (citing RESTATEMENT (SECOND) OF CONTRACTS § 4 cmt. b (1982))). "To state a cause of action for breach of an oral contract, a plaintiff is required to allege facts that, if taken as true, demonstrate that the parties mutually assented to a certain and definite proposition and left no essential terms open." *W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc.*, 728 So. 2d 297, 300 (Fla. 1st DCA 1999) (cleaned up). Notably, whether there has been a "meeting of the minds" is a question of fact. *See Graf v. Liberty Mut. Ins. Co.*, 636 So. 2d 539, 542 (Fla. 5th DCA 1994) (reversing summary judgment for the defendant because "it [was] not clear that there was a meeting of the minds in reaching the alleged agreement"); *see also Fla. Emergency Physicians*, 526 F. Supp. 3d at 1302 ("The Court finds that disagreements as to whether the Parties' conduct gives rise to an implied in fact contract would best be evaluated on a more complete record at a later stage in the litigation. At present, Plaintiffs have alleged sufficient facts to survive the United Defendants' Motion to Dismiss.").

…

In any event—and especially given these added details about the Defendant's assent—we agree with Magistrate Judge Hunt's observation that ***"whether an implied-in-fact contract has been formed can be a fact-intensive inquiry better resolved after discovery."*** R & R at 7 (citing *Rosner v. United States*, 231 F. Supp. 2d 1202, 1217 (S.D. Fla. 2002) (Seitz, J.))." *Vanguard Plastic Surgery, PLLC v. UnitedHealthcare Ins. Co.*, 658 F. Supp. 3d 1250, 1262 (S.D. Fla. 2023) (emphasis added).

Additionally, Article 14, Section 14.2, of the FA, states that a Franchisee, shall not sell, assign, transfer, convey, pledge, encumber, merge, or give (collectively, "transfer") away any direct or indirect interest in Franchisee, in the Shop, or in all or substantially all of the assets of the Shop or the business franchised hereunder, without Company's prior written consent.

Article 14, Section 14.3.4, of the FA, states that any proposed assignment agreement shall be in a written agreement, in a form designated by RITA'S, and in which the new party agrees to be bound as an Owner under the terms of the FA. RITA'S had a legal remedy (breach of contract) to establish ICE RAK's status as an assignee or transferee of a franchise, which it chose not to pursue.

RITA'S had 24 months (*i.e.*, two years), to commence either a judicial or arbitration proceeding starting "***from the occurrence of the facts giving rise to such claim or action***" (*i.e.*, since RITA'S became aware of the existence of ICE RAK in May 2021 and its unsuccessful attempts to execute a transfer of interest).

ICE RAK, not being a signatory nor acquiring a transfer of interest, is not bound by the FA, and therefore, not subject to its arbitration clause.

Therefore, RITA'S allegations that ICE RAK is required to submit to arbitration in accordance with the doctrine of equitable estoppel does not apply.

### III.     CONCLUSION

Throughout the course of their business affiliation, RITA'S maintained a Franchisor/Franchisee relationship with ICE RAK, while simultaneously failing to comply with various provisions of its own written franchise agreement, (such as, but not limited to, Article 5, Article 5.2, and Article 14 of the Franchise Agreement).

RITA'S now wishes to enforce terms RITA'S itself did not comply with, under a written franchise agreement ICE RAK couldn't have executed as it did not exist at the time, and under which RITA'S never executed the transfer of interest.

Under Art. 26.9 of the written Franchise Agreement, RITA'S claims ICE RAK is bound by the written Franchise Agreement. However, as previously stated, (i) ICE RAK did not exist at the time of the execution of the written Franchise Agreement, and (ii) Florida case law dictates that a pre-incorporation contract only binds the Promoter, and not the yet-to-be formed legal entity except for a narrow exception that does not apply to the instant case.

Under Art. 26.6 of the Franchise Agreement RITA'S had 24 months to initiate either judicial or arbitration proceedings against ICE RAK *__from the occurrence of the facts giving rise to such claim or action__*, which it did not do though RITA'S had ample knowledge and resources to execute same.

As a final note, a defendant cannot rest on its laurels without consequences where arbitration is concerned. RITA'S advances an interpretation of the Arbitration Agreement that would place in its hands substantial control over when, if ever, plaintiffs could seek to vindicate their rights. Any agreement eliminating judicial resolution as a backstop for an unserious or misbehaving defendant would be suspect—which is why RITA'S interpretation strains credibility.

**WHEREFORE**, Plaintiff ICE RAK, LLC, requests this Court (i) deny Defendant's Motion to Stay Proceedings Pending Arbitration [D.E. 08], (ii) enter an order denying said Motion, and (iii) any further relief this Court deems just, equitable, and proper.

Dated this March 1, 2024.

Respectfully submitted,

**TREMBLY LAW FIRM**
*Counsel for Plaintiff, ICE RAK, LLC*
9700 South Dixie Highway, PH 1100
Miami, Florida 33156
Telephone: (305) 431-5678
E-Mail: arturo@tremblylaw.com
E-Mail: service2@tremblylaw.com

By: /s/ Arturo L. Arca
    **Arturo L. Arca, Esq.**
    Florida Bar No. 63354

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 1, 2024, the foregoing was filed with the Clerk of Court using the CM/ECF system and has been served on all counsel of record.

By: /s/ Arturo L. Arca
    **Arturo L. Arca, Esq.**